W. T. S, BEAR ET AL., Appellants, v. THE CITY OF CEDAR
RAPIDS, The Mayor and City Council Thereof, et al.,
Appellees.

**Municipal corporations:** ORDINANCES: LICENSES: SALE OF DAIRY PROD-
UCTS: INSPECTION OF DAIRIES: STATUTES. Municipal corporations
can only exercise such powers as are expressly granted by statute,
or such implied powers as are necessary to render available the
powers expressly conferred and essential to carry out the pur-
poses of the corporation; and these powers are to be strictly con-
strued.

In the instant case the statutes are reviewed and it is held that
neither the statutes nor the rule of the State Board of Health
authorize a city, either expressly or by implication, to adopt an
ordinance requiring that dealers in milk and cream procure a
license, or to require an inspection of dairies or dairy cattle.

**Same.** Power of a city to require a license of milk dealers is not
to be implied from power to punish by a fine or to regulate the
milk business; nor does such implied power exist by reason of
the fact that the State itself has attempted to regulate the matter
and has provided for licensing the business.

**Same:** CONSTITUTIONAL LAW: UNIFORMITY OF OPERATION: DELEGATION
OF POWER. Even had a city such power the ordinance in ques-
tion vests a discretion in the city Board of Health to arbitrarily
grant or refuse a license, thus destroying the guaranty of equal
opportunity, and is an unlawful delegation of power.

**Injunction:** RESTRAINT OF VOID ORDINANCE. A milk dealer affected by
a void ordinance requiring all persons selling milk to procure a
license after inspection of the dairy at the dealer's cost, and
imposing penalties for its violation, may enjoin the enforcement
of the ordinance.

*Appeal from Linn District Court.*—HON. MILO P. SMITH,
Judge.

TUESDAY, MAY 10, 1910.

SUIT in equity to enjoin the enforcement of a city
ordinance. A temporary writ of injunction issued as

prayed, which, upon defendants' motion, was dissolved. Plaintiffs appeal.—*Reversed* and *remanded.*

*Deacon, Good, Sargent & Spangler,* for appellants.

*Redmond & Stewart* and *F. C. Byers,* for appellees.

DEEMER, J.—The city council of defendant city adopted an ordinance, whereby it assumed the power and authority to require any and all persons selling milk or cream within the city limits of said city to apply for a license therefor from the city, and assumed the power to issue such license and to determine to whom such licenses should be issued. The city by said ordinance, also assumed the right and authority to inspect the herds of such licensees from time to time by their veterinarian or other officer, and in such inspection to use what is known as the tuberculin test as a diagnostic agent for the detection of tuberculosis, and also the licensees were prohibited from selling milk or cream within said city while any contagious disease existed in the family of the licensee or the family of the keeper of the herd. The licensee was required to pay a license fee, and in addition to pay all costs of inspecting his herd, including the cost of applying the tuberculin test. A penalty of not less than $1 nor more than $100 was provided for violation of the ordinance.

Defendant city is organized under what is known as the commission plan of government, and its city council is the board of health of the city. On March 27, 1909, the council passed the ordinance in question, its title being: "An ordinance providing for inspection and testing of milk and cream, dairy, dairy herds, and to license and regulate the sale of milk and cream in the city of Cedar Rapids." This ordinance provided that;

1. MUNICIPAL CORPORATIONS: ordinances: licenses: sale of dairy products: inspection of dairies: statutes.

All persons desiring to sell milk or cream within the limits of the city must make application in writing under oath to the board of health of said city for a license to carry on said business, the application to state the exact location where applicant's cows were kept, their number, whether owned or kept by the applicant, and the manner in which the applicant intended to dispose of his milk and cream; that by the filing of said application, said applicant authorized said city to inspect applicant's dairy and dairy herd, and requires the board of health of said city, through its veterinarian or other officer, to make such inspection, and to use in such inspection what is commonly known as the tuberculin test, and to tag each animal in such a way as to make a permanent record of such inspection and its result.

It also provided that:

Said board of health, after investigation, 'whether from a consideration of such report, or from other sources, shall adjudge and determine what applicant or applicants may be entitled to obtain a license to sell milk and cream within said city,' and shall license such persons so selected, such licensee to pay the cost of inspecting his dairy and dairy herd, and for one dollar for such license and each renewal thereof; that all veterinarians and officials of said board of health shall have the right at any and all times to enter the premises of any person so licensed to inspect the dairy and dairy herd of such licensee, and said board is required to cause such inspection to be made from time to time, and is required to cause such inspection and test to be made at least once in each year.

The ordinance further provides that:

No licensee 'will be permitted to sell, keep for sale, or offer for sale, any milk or cream from said designated cows or herds when measles, chicken pox, scarlet fever, diphtheria, typhoid fever, small pox or other infectious or contagious disease exists, either at the place where said cows or herd are kept or in the family of the keeper of the same, until permitted so to do by the board of health, after proper fumigation under supervision of said board,'

and provides that a violation of any of the provisions of the ordinance shall be punishable as a misdemeanor and subject the person so violating it to a fine not to exceed $100 and imprisonment, and to a cancellation of his license at the discretion of said board of health.

We have not set forth the entire ordinance, for it is long, and many parts of it are unimportant, and need not be considered in this opinion.    Appellants contend that this ordinance is invalid for the following reasons: "(1) No authority to enact said ordinance has ever been conferred upon the city of Cedar Rapids by the Legislature of Iowa, but on the contrary, the authority to license city milk dealers and dairymen is conferred by chapter 13 of the Code of Iowa of 1897 upon the Dairy Commissioner of the State of Iowa.    (2) That the ordinance is unreasonable in its provisions.    (3) That the ordinance is not of a general character, but grants to the board of health discretion to determine who of the applicants who comply with its provisions shall receive licenses.    (4) That the ordinance is void because in violation of article 14 of the Constitution of the United States, and section 6, article 1, of the Constitution of Iowa."

The statutes of the state do not confer express powers upon a city to regulate, license, suppress, or restrain the sale of milk, and the only sections which are relied upon by appellee are 680, 2568, 2525, and 4989 of the Code, and sections 4999a22 and 5028j of the Code Supplement of 1907.    There is also a rule of the State Board of Health upon which some reliance is placed, to which we will hereafter make reference.    Section 680 reads as follows: "Municipal corporations shall have power to make and publish, from time to time, ordinances, not inconsistent with the laws of the state, for carrying into effect or discharging the powers and duties conferred by this title, and such as shall seem necessary and proper to provide for the safety, preserve the health, promote the

prosperity, improve the morals, order, comfort and convenience of such corporations and the inhabitants thereof, and to enforce obedience to such ordinances by fine not exceeding one hundred dollars, or by imprisonment not exceeding thirty days." Whilst this statute is very general in its terms, it does not give the city power to do more than impose fines. Thereunder it can not license or provide any other remedy than that authorized by the statute itself. *Des Moines v. Gilchrist,* 67 Iowa, 212; *Foster v. Brown,* 55 Iowa, 686; *Henke v. McCord,* 55 Iowa, 378; *City of Mt. Pleasant v. Breeze,* 11 Iowa, 399; *Burlington v. Keelar,* 18 Iowa, 59; *City of Burlington v. Bumgardner,* 42 Iowa, 673; *City of Chariton v. Barber,* 54 Iowa, 360; *Keokuk v. Scroggs,* 39 Iowa, 447. So that we find no authority under this section for the passage of the ordinance in question.

Chapter 13, title 12 of the Code provides for the appointment of a dairy commission, and section 2525, which is found in that title, reads in this wise: "Any person or corporation who shall sell milk or cream from a wagon, depot or store, or sell or deliver milk or cream to a hotel or restaurant or boarding house, or any public place in any such city, shall be considered a city milk dealer. No such city milk dealer shall sell milk or cream from a wagon, depot or store in any such city without a written permit from the commissioner for each wagon, for which he shall pay annually one dollar. All permits shall expire on the fourth day of July of each year, and no permits shall be issued for less than one dollar." As the next section is important, we copy it here, although somewhat out of order. It is as follows: "He or his agent may open any can or vessel containing milk or cream offered for sale in such city, and inspect its contents and take samples therefrom for testing or analysis, and any city milk dealer or employee of such milk dealer, or any other person who shall resist or interfere with the commis-

sioner or his agent in the performance of his duties in executing any of the requirements of this chapter, shall be guilty of a misdemeanor and punished as provided in this chapter." Code, section 2526.

In the same connection we here quote, sections 2522 and 2524, reading as follows:

Section 2522. Every city milk dealer, or every person furnishing milk or cream to such dealer, or to employe of such milk dealer, and every person or corporation or the employee of such person or corporation, who operates a creamery, cheese or condensed milk factory, or reworks or packs butter, shall maintain his premises and utensils in a clean and hygienic condition, and shall make, upon blanks furnished by the dairy commissioner, such reports and statistics as may be required for the purpose of compiling statistics authorized by this chapter, and such dealer, owner, operator or business manager shall make such returns and reports in the manner and in the time prescribed by the commissioner, and certify to the correctness thereof.

Section 2524.. The commissioner may appoint agents in any city having over ten thousand inhabitants to collect from each dealer, not more than four times each month, samples of milk offered for sale therein. The agent shall make an accurate test of each sample received by him, and keep a true record thereof, with the name and location of the person from whom it was obtained, and report his work in detail to the commissioner, the compensation therefor not to exceed three dollars for each day actually employed therein.

It is manifest that there is nothing in these sections authorizing the passage of such an ordinance as the one now before us:

Section 4989 reads as follows:

If any person shall sell, exchange, or expose for sale or exchange, or deliver or bring to another, for domestic or potable use, or to be converted into any product of human food, any unclean, impure, unhealthy, adulterated,

unwholesome or skimmed milk, or milk from which has
been held back what is commonly known as strippings, or
milk taken from an animal having disease, sickness, ulcers,
abscess or running sore, or which has been taken from an
animal within fifteen days before or five days after par-
turition; or if any person, having cows for the purpose
of producing milk or cream for sale, shall stable them
in an unhealthy place or crowded manner, or shall know-
ingly feed them food which produces impure, unwholesome
milk, or shall feed them distilled glucose or brewery waste
in any state of fermentation, or upon any substance in
a state of putrefaction or rottenness or of an unhealthy
nature, or shall sell or offer for sale cream which · has
been taken from milk the sale of which has been prohib-
ited, or who shall sell or offer for sale, as cream, an
article which shall contain less than the amount of butter
fat as prescribed in this chapter: or if any person shall
sell or offer for sale any cheese manufactured from skimmed
milk, or from milk that is partly skimmed, without the
same being plainly branded, stamped or marked on the
side or top of both cheese and package, in a durable man-
ner in the English language, · the words 'skimmed-milk
cheese' the letters of the words to be not less than one
inch in height and one-half inch in width.   .   .   .

This confers no authority whatever upon the city.
It is a penal statute pure and simple, and does not under-
take to confer power upon any department or subdivision
of the state.

Section 4999a22 of the Code Supplement of 1907
is a paragraph of the pure-food law, and simply defines
adulteration. It has no possible reference to the question
before us.   Section 5028j of the same Supplement reads:

That the importation of registered cattle or cattle eli-
gible to registry for breeding and dairy purposes into this
state is hereby prohibited, except when such cattle are
accompanied with a certificate from an inspector whose
competency and reliability are certified to by the authority
charged with the control of domestic animals in the state
from whence the cattle came, certifying that said cattle

have been examined and subjected to the tuberculin test within sixty days next preceding the date of such importation, and are free from disease.

It manifestly confers no powers upon a city.

We have already referred to a resolution of the State Board of Health. That resolution reads as follows:

When Asiatic cholera, epidemic cerebro-spinal meningitis, smallpox, diphtheria (including membranous croup), scarlet fever, measles or tuberculosis exists in any house or dwelling occupied by a dealer or seller of milk or other dairy products, he shall discontinue to give, sell or distribute such products to any person, or to creameries or butter factories, and such milk or dairy products shall not be removed from the infected or quarantined premises until a written permit is granted therefor by the mayor or township clerk, and countersigned by the health officer. No person who attends cows, or does the milking, or who has care of milk vessels, or who manufactures or handles butter or other dairy products, or has for sale or distribution butter, milk, or other dairy products, shall be permitted to enter a premises wherein exists any of the diseases named herein, nor shall he come in contact either directly or indirectly with any person who resides in, or upon or is an occupant of such infected or quarantined place or premises. Rule 21, State Board of Health, 1907.

This seems to be complete and perfect in itself, and it confers no powers upon the city acting as such or as a board of health.

Section 696 of the Code provides that:

They shall have power to prevent injury or annoyance from anything dangerous, offensive or unhealthy, and to cause any nuisance to be abated; to provide for the destruction of weeds and other noxious growths upon any of the lots therein; to provide for the immediate seizure and destruction of tainted or unsound meat or other provisions; to establish all needful regulations as to the management of packing and slaughter houses, renderies, tal-

low chandleries and soap factories, bone factories, tanneries, and manufactories of fertilizers and chemicals, within the limits of such cities or towns; to regulate and restrain the deposit and removal of all offensive material and substances, and the engendering of offensive odors and sights therefrom, so as to protect the public against the same; to establish and regulate slaughter houses; and, in cities having five thousand or more inhabitants, to build and control the same.

These are all the provisions of the written law applicable to the case, and it is manifest that none of them give, either to the city or to the board of health, power to license milk dealers. That power seems to be conferred on the dairy commissioner; and the matter of tuberculin tests seems to be reposed upon the state veterinarian. The universal rule, not only for this state but everywhere, is that: "Municipal corporations can exercise such powers only as are expressly granted, and such implied ones as are necessary to make available the powers expressly conferred and essential to effectuate the purposes of the corporation, and these powers are strictly construed." Or, as stated in other cases, cities of this state have these powers: First, those granted by the Legislature in express words; second, those necessarily or fairly implied or incident to the powers expressly conferred; and, third, those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable. *Heins v. Lincoln,* 102 Iowa, 77; *Burroughs v. Cherokee,* 134 Iowa, 429.

Even if the city has power to punish by fine or to regulate the milk business, this would not authorize it to exact a license. *City v. Bumgardner, supra.* No implied power exists, for the reason that the 2. SAME. state itself has attempted to regulate the matter, and has provided for licensing the business. *Iowa City v. McInerey,* 114 Iowa, 592. Moreover, the matter of tuberculin tests seems to be covered by section 5028j

of the Code Supplement, and this does not in any manner refer to cities.

Again, even if it were permissible for either the city or the board of health to exact a license, attempt is made by the ordinance to vest a discretion in the board of health which the law does not permit, and which would be intolerable in its operation. Under the ordinance the board might arbitrarily and without reason refuse a license to some and grant it to others. All are not placed on an equality, and the guaranty of equal opportunity in the law and under the law is disregarded. If the city had the power to license, it could not delegate this power to another body, leaving to that body a discretion in the matter. This is in effect the holding in *State Center v. Barenstein,* 66 Iowa, 249.

3. SAME: constitutional law: uniformity of operation: delegation of power.

In *Lumber Co. v. Cicero,* 176 Ill. 27 (51 N. E. 764, 42 L. R. A. 704, 68 Am. St. Rep. 163), the Supreme Court of Illinois said: "It prohibits that which is in itself and as a general thing perfectly lawful and leaves the power of permitting or forbidding the use of traffic teams upon the boulevard to an unregulated official discretion, when the whole matter should be regulated by permanent local provisions operating generally and impartially. The ordinance is not general in its operation. It does not affect all citizens alike who use traffic vehicles. It is only persons driving traffic vehicles upon the boulevard without the permission of the board of trustees who are subjected to the penalties of the ordinance. The ordinance in no way regulates or controls the discretion vested thereby in the board. It prescribes no conditions upon which the special permission of the board is to be granted. Thus the board is clothed with the right to grant the privilege to some and to deny it to others. Ordinances which thus invest the city council or a board of trustees with a discretion which is purely arbitrary, and which may be exer-

cised in the interest of a favored few are unreasonable and invalid." See, also, *Yick Wo v. Hopkins,* 118 U. S. 359 (6 Sup. Ct. 1064, 30 L. Ed. 220); *City v. Dudley,* 129 Ind. 112 (28 N. E. 312, 13 L. R. A. 587, 28 Am. St. Rep. 180).

If it were necessary to a disposition of the case we should be inclined to hold that the ordinance is so unreareasonable in its provisions that it can not be upheld, but we do not find it necessary to pass upon that question; nor do we consider the question of its constitutionality. It is enough to say that we find no authority in law for such an ordinance, and that if there were such delegation of arbitrary power to the board of health to grant or refuse licenses in its discretion it could not be upheld. We are also constrained to hold that, as the Legislature has provided for licensing and inspecting the business by other officers or bodies, and there is no express power in the city to do so, no implied power should be held to exist.

That plaintiffs may enjoin the enforcement of a void ordinance under the facts shown should not be a question of doubt. Such remedy has frequently been upheld. This

4. INJUNCTION: restraint of void ordinance.

is a day of prevention—preventive medicine, preventive law, and preventive jurisprudence. *City of Austin v. Austin City, etc.,* 87 Tex. 330 (28 S. W. 528, 47 Am. St. Rep. 114), upholds the remedy here adopted, and it cites a number of supporting cases. This case is referred to with approval in *Ewing v. Webster City,* 103 Iowa, 226, and is not in conflict with that decision. The ordinance involves something more than a penalty. If enforced, it may mean the destruction of plaintiff's business.

Our final conclusion is that the trial court was in error in dissolving the injunction. The case will therefore be reversed and remanded, for a decree in harmony with this opinion.—*Reversed* and *remanded.*