CHARLES BUTTERWORTH, Appellee, v. STATE HIGHWAY COMMISSION et al., Appellants.

No. 40565.

October 21, 1930.

*Maxwell A. O'Brien,* Assistant Attorney-general, for appellants.

*C. W. Garfield,* for appellee.

Faville, J.—The facts in this case, as shown by the record, are succinctly stated in the findings of the trial court as follows:

"Plaintiff's farm consists of 160 acres, and is located some 5 or 6 miles north of the city of Fort Dodge. Primary Road No. 16, running north and south through Webster County, abuts this farm on the east, and heretofore it has turned at right angles to the east at the northeast corner of the farm; but the highway commission has lately changed and relocated it by turning west at the corner in question for some distance, and thence north to Humboldt and points further on. It is the purpose of the commission to improve the highway, as thus relocated, by grading, draining, and paving, all to be done in the near future. Plaintiff's improvements, including his dwelling house, barns and outhouses, lawn, and ornamental trees, are located at the extreme northeast corner of the farm. It is intended by the commission to 'round' the corner in question by a very wide arc, commencing to the south of the fence corner some 1,237 feet, and running thence northwesterly by a continuous curve to a point on the east and west road approximately the same

distance west from the corner. The curve will thus utilize substantially the entire northeast 40-acre tract of the farm: that is to say, from a point near the southeast corner of the 40 to a point near the northwest corner thereof. Plaintiff's improvements will be completely detached from the main body of his farm and isolated in the northeast corner thereof, with a paved, heavily traveled primary road separating the improvements from the cultivated portions of the farm.''

The following plat will assist in an understanding of the situation.

It is the appellee's contention that the proposed construction of the highway under the existing conditions is a violation of the provisions of Chapter 21 of the Acts of the Forty-third General Assembly. The portion of said chapter material to be considered is as follows:

"The provisions of Chapter two hundred thirty-seven (237) of the Code, 1927, shall not apply to the establishment, vacation, alteration or improvement of primary roads. No such roads shall be established through any cemetery or burying ground without the consent of all of the parties affected by the same, nor shall any ground be taken for the rounding of a corner where the dwelling house, lawn and ornamental trees connected therewith are located at such corner, except by consent of the owner thereof."

The appellee's dwelling house, lawn, and ornamental trees connected therewith are located in the northeast corner of his farm. By the proposed construction of the highway, according to the testimony of the resident engineer for the state highway commission, "there would be a little less than four acres left in the northeast corner and to the east and north of the proposed curve." It also appears from the evidence of this witness that:

"This curve is about such a curve as the state highway commission is making on all the primary roads under construction where a turn is required. The degree of the curve is the approximate curve used."

The ultimate question in the case is whether or not the proposed construction is a rounding of a corner, within the meaning of Chapter 21 of the Acts of the Forty-third General Assembly. The sentence in which said clause is found was incorporated in said chapter by an amendment which was introduced in the house of representatives and finally adopted by both branches of the legislature. We must construe this statute in view of the evident purpose and intent of the legislature.

As shown by the evidence quoted, the proposed curve is of the kind and character that the state highway commission is making on the primary roads of the state where a turn is required. We must assume that the legislature had knowledge of such fact when the statute was enacted, and purposely and intentionally dealt with the matter of a curve or rounding by a primary road of a corner where the dwelling house, lawn, and ornamental trees connected therewith were located at such a corner. It is argued that "rounding a corner" means cutting off the point of a corner, and not going behind the corner with

a curve, as it is proposed to do in the instant case. We are clearly of the opinion that the legislature, in view of the methods adopted by the state highway commission, did not intend that any such construction as claimed by appellants should be placed upon the language used. The record shows that the uniform method adopted by the state highway commission in the construction of primary roads is to "round" a corner in substantially the manner contemplated in the instant case,—that is, by constructing such a curve as herein proposed, instead of by cutting off the so-called "point" of the corner. The purpose of the legislature was to prevent this method of construction where the dwelling house, lawn, and ornamental trees upon the farm were located at such a corner. It was obviously the intention of the legislature to prohibit the doing of the very thing that is contemplated in the instant case: namely to "round the corner" by leaving the dwelling house, lawn, and ornamental trees at the corner in a little tract of a few acres, entirely segregated from the remainder of the farm by a primary highway.

In considering this statute in *Hoover v. Iowa State Highway Com.*, 210 Iowa 1, we said:

" 'Round' means 'to give curved form to; not angular; to go round wholly or in part; to go about a corner or point.' Webster's New International Dictionary. In the instant case, this definition is applicable. There was no rounding of a corner. There was no corner. The language of the statute is simple, and means what it says."

In the instant case, there is a farm where the dwelling house, lawn, and ornamental trees are situated at the corner. It is proposed to round this corner by giving a curved form to the road, in accordance with the established method and custom of the state highway commission. The statute was, we believe, designed by the legislature to meet just such a situation as we find in the instant case. To deny the appellee the right to injunctive relief, in view of the plain language of the statute, would be to, in effect, repeal the statute by judicial pronouncement. This we cannot do. In view of the undisputed facts in the case, the trial court did not err in granting the appellee the injunctive relief sought, and the decree must be, and is, in all respects—*Affirmed.*

1236

MORLING, C. J., and EVANS, STEVENS, ALBERT, and KINDIG, JJ., concur.

GRIMM, DE GRAFF, and WAGNER, JJ., dissent.

GRIMM, J. (dissenting).—I am entirely satisfied in my own mind that the legislature only intended to prevent taking a portion of a man's front-door yard for the rounding of a corner in a highway. Under the opinion, we find ourselves in this somewhat ridiculous position: The road can be built back of the buildings in controversy, in a straight line, connecting the north and south road with the east and west road. This method of procedure will be valid, because no curve is used; there is no "rounding." So far as any damage to the farm owner is concerned, locating the road by a straight line would be practically as great as by a curve. In any event, the presumption is that the farmer is abundantly recompensed for any damage that may be done the farm, whether it is done by a straight line or by a curve.

I think the case should be reversed. I am authorized to say that JUSTICES DE GRAFF and WAGNER join in this dissent.