CHARLES R. REED, Appellee, v. IOWA STATE HIGHWAY COMMISSION et al., Appellants.

No. 43249.

MARCH 17, 1936.

Edward L. O'Connor, Attorney General, C. E. Walters, Special Assistant Attorney General, and Nichol & Nichol, for appellants.

Cross & Hamill, for appellee.

MITCHELL, J.—Charles R. Reed, the owner of the property hereinafter described, commenced this action to restrain the highway commission and others from entering upon, condemning, appropriating, and taking 5.22 acres of his land, with the improvements thereon, for highway purposes. Injunctive relief was asked on the ground that the proposed condemnation and appropriation was unlawful, arbitrary, and oppressive in the following particulars:

(1) The proposed appropriation and construction constituted a rounding of the corner of appellee's property where his dwelling house and other improvements are located, contrary to the provisions of section 4755-b27 of the Code of Iowa of 1931.

(2) The proposed taking was excessive in amount, not all necessary for highway purposes, and, as proposed, was a subterfuge and an attempt to evade the statutory prohibition against rounding a corner.

(3) Complete surveys, plans, and specifications for the work had not been prepared and filed as provided in section 4755-b9 of the Code of 1931.

(4) Plaintiff's property is wholly within the incorporated town of Colo, Iowa, and the consent of the town council to the proposed construction had not been obtained as required by section 4755-b26 of the Code of Iowa of 1931.

The defendants answered, admitting their intention to appropriate a tract of plaintiff's property for right of way purposes, with the improvements thereon, in the amount and shape set out in the petition, and their intention to construct thereon public improvements of the kind charged, but alleged that the ground sought to be condemned was necessary and the taking thereof

within the reasonable discretion of the highway commission, and denied their proposed appropriation and construction constituted the rounding of a corner within the statutory prohibition, and denied that it was illegal in any other respect.

It was agreed in open court that an action in equity for an injunction was the proper way to raise the question and determine the controversy.

The trial court held:

(1) That the amount of land proposed to be taken was within the reasonable discretion of the highway commission;

(2) That there had been no fatal omission to prepare and file surveys, plans, and specifications;

(3) That the situation was not such as to require the approving action of the town council of Colo; and

(4) That the proposed appropriation and construction did constitute the rounding of a corner, within the legislative prohibition;

And granted the injunctive relief prayed for. Plaintiff did not appeal. Defendants have appealed.

It therefore follows that the only question before this court is the one which was decided adverse to the defendants, to wit, that the proposed appropriation and construction did constitute the rounding of a corner within the legislative prohibition, upon which ground alone the lower court granted the injunction prayed for.

The appellee Reed owns lot B of Blair's addition to the town of Colo, in Story county, Iowa. This lot contains a little over 14½ acres, and is rectangular in shape, located in the extreme northeast corner of section 8, township 83, range 21, New Albany township. A dwelling house and other buildings are located in the northeast corner of the lot, upon the tract sought to be appropriated by the highway commission. Outside of the lawn and other grounds adjacent to the dwelling house, the lot is under cultivation as farm land. The house is occupied by a tenant of the owner, who is employed by appellee to assist in the operation of an oil station and lunch counter located just across the road north and a little west.

About thirty years ago there was a street opened and used, running east and west along the south line of the Reed lot, and also one fenced off and used running north and south on the section line along the east side of the lot. The road running

north and south along the east line of the lot, however, was fenced and has not been used as a highway since 1866, since which time it has been under cultivation.

Federal Highway No. 30 (the Lincoln Highway) runs east and west along the north side of the Reed property. Federal Highway No. 65 (the Jefferson Highway), coming from the north, makes a "T" intersection with Highway No. 30 at the northeast corner of section 8 and the northwest corner of section 9. Until a few years ago traffic on No. 65 came down and made a square turn when passing on to route No. 30. However, the highway commission acquired the right of way for and constructed two curved roadways, branching off from No. 65 some 850 feet north of highway No. 30. One of these roadways curved to the west on about a six-degree curve and connected with Highway No. 30 about 850 feet west of the old intersection. The other made a similar curve to the east and connected with route No. 30 about 850 feet east of the old intersection. Highways No. 30 and 65 and these curved wings were all approximately 100 feet wide. The triangular portion of ground enclosed by the original roads No. 30 and 65, and the curved wings, were not acquired by the highway commission and are still privately owned.

Primary Highway No. 64, coming from the south, runs along the line between sections 8 and 9, for some distance, until it reaches a point about a quarter of a mile south of the point in controversy, where it turns into the streets of Colo. It is the plan of the highway commission to extend this highway north along the section line, under the Northwestern Railroad tracks, to intersect Highway No. 30 and connect with Federal Highway No. 65 at the northeast corner of section 8, where Highways No. 30 and 65 now intersect. In connection with this extension they propose to construct curved wings or roadways similar to those now constructed north of Highway No. 30. The one on the Reed land will begin about 850 feet south of Highway No. 30, at Reed's southeast corner, and will then run on a six-degree curve a distance of about 1,500 feet to Reed's northwest corner. The right of way for this curve will be 100 feet wide. The travelable portion of the road will be 34 feet, and the paved portion of it will be 20 feet.

In seeking to appropriate the land that the highway commission deemed necessary for present and future use for high-

way purposes, it desires to acquire all of the land within the triangles formed by Highway No. 30, the proposed extension of No. 64 to the north, and the curved wings of the right of way above referred to. The total amount of land belonging to Reed sought to be acquired is 5.22 acres.

The trial court held that the amount of land proposed to be taken was within the reasonable discretion of the highway commission. Appellee does not complain of this finding, and therefore we are not confronted with that question.

The situation at the point in controversy is a little bit difficult to describe but comparatively easy to illustrate. The following outline drawing will clarify the description:

The legislature of this state saw fit to pass section 4755-b27, Code 1931, which is as follows:

"4755-b27. Jurisdiction to establish. In the maintenance, relocation, establishment or improvement of roads hereunder, including extensions of primary roads within cities and towns as provided in the preceding section, the state highway commission shall have the authority to purchase or to institute and maintain proceedings for the condemnation of the necessary right of way therefor and for the condemnation of land, including a sufficient roadway to such land by the most reasonable route, for the purpose of obtaining gravel or other suitable material with which to improve such roads.

"All the provisions of the law relating to the condemnation of lands for public state purposes, shall apply to the provisions hereof.

"The provisions of chapter 237 shall not apply to the establishment, vacation, alteration or improvement of primary roads.

"No such roads shall be established through any cemetery or burying ground without the consent of all of the parties affected by the same, nor shall any ground be taken for the rounding of a corner where the dwelling house, lawn and ornamental trees connected therewith are located at such corner, except by consent of the owner thereof."

It is conceded that in the case at bar the dwelling house, lawn, or ornamental trees connected therewith are located at such corner, and the land is being taken without the owner's consent.

So the sole queston before us is whether or not the taking of this land is for the rounding of a corner such as is prohibited by the statute.

This court has had before it two cases involving the construction of this same section of the Code. In the case of Hoover v. Highway Commission, 210 Iowa 1, at page 7, 230 N. W. 561, 564, the late Justice DeGraff, speaking for the court, said:

"A 'straight line,' according to geometric definition, is the shortest distance between two points. 'Round' means 'to give curved form to; not angular; to go round wholly or in part; to go about a corner or point.' Webster's New International Dictionary. In the instant case this definition is applicable. There was no rounding of a corner. There was no corner."

The question next came before the court in the case of Butterworth v. State Highway Commission, 210 Iowa 1231, 232 N. W.. 760. Butterworth owned 40 acres of land about eight miles north of the city of Fort Dodge. The main highway from the north entering this progressive city ran along the east side of the Butterworth land. There was also a highway along the north side of the land. The highway commission proposed to condemn sufficient land for the purpose of putting in a curved roadway, very similar to the curves in controversy in the case at bar, connecting the road on the east line with the road on the north line. Butterworth's improvements were located on the northeast corner of the tract that the highway commission proposed to take for the curved roadway, and some additional area in the points of the triangle thus formed, but did not attempt to condemn the land on which the improvements stood. This court said, at page 1234:

"The ultimate question in the case is whether or not the proposed construction is a rounding of a corner, within the meaning of chapter 21 of the Acts of the Forty-third General Assembly. The sentence in which said clause is found was incorporated in said chapter by an amendment which was introduced in the house of representatives and finally adopted by both branches of the legislature. We must construe this statute in view of the evident purpose and intent of the legislature.

"As shown by the evidence quoted, the proposed curve is of the kind and character that the state highway commission is making on the primary roads of the state where a turn is required. We must assume that the legislature had knowledge of such fact when the statute was enacted, and purposely and intentionally dealt with the matter of a curve or rounding by a primary road of a corner where the dwelling house, lawn, and ornamental trees connected therewith were located at such a corner. It is argued that 'rounding a corner' means cutting off the point of a corner and not going behind the corner with a curve, as it is proposed to do in the instant case. We are clearly of the opinion that the legislature, in view of the methods adopted by the state highway commission, did not intend that any such construction as claimed by appellants should be placed upon the language used. The record shows that the uniform method adopted by the state highway commission in the construction of

primary roads is to 'round' a corner in substantially the manner contemplated in the instant case,—that is, by constructing such a curve as herein proposed, instead of by cutting off the so-called 'point' of the corner. The purpose of the legislature was to prevent this method of construction where the dwelling house, lawn, and ornamental trees upon the farm were located at such a corner. It was obviously the intention of the legislature to prohibit the doing of the very thing that is contemplated in the instant case: namely to 'round the corner' by leaving the dwelling house, lawn, and ornamental trees at the corner in a little tract of a few acres, entirely segregated from the remainder of the farm by a primary highway. * * *

"In the instant case, there is a farm where the dwelling house, lawn, and ornamental trees are situated at the corner. It is proposed to round this corner by giving a curved form to the road, in accordance with the established method and custom of the state highway commission. The statute was, we believe, designed by the legislature to meet just such a situation as we find in the instant case. To deny the appellee the right to injunctive relief, in view of the plain language of the statute, would be to, in effect, repeal the statute by judicial pronouncement. This we cannot do."

It is the claim of the commission in the case at bar that they are not rounding the corner, since they are proposing to take the entire intervening area of land rather than only the strips needed for actual travel; that they are engaged, not in the rounding of a corner, but in the taking of a solid triangular tract of land.

No clearer answer to the contention of the appellant can be given than is found in the decision of the learned trial court, wherein he said:

"The argument is specious rather than persuasive. It proceeds on a theory which would enable the commission, by doing even worse than the legislature had in contemplation when it enacted the statute, to circumvent and defy the statute entirely. In every case to which the statute might be found applicable, the commission could avoid it by a like simple process of taking both the land and the improvements between the curve and the corner."

The prohibition of the statute is against passing around the

corner of the property with a curved roadway, whether that roadway cuts through the property at the corner or whether it obliterates the corner, so far as the owner is concerned, and leaves a curved roadway around the outside boundary of what is left of his property. In either case the road goes around the corner, or rounds the corner; and in either case, it gives a round form to the corner. It is impossible to place upon the statute in question any other construction and still leave it an intelligible expression. The engineers of the highway commission admitted that the six-degree curve employed is the standard form of curve used by the highway commission in rounding corners. They propose to use that curve and that form of construction to round the corner of appellee's property, and therefore come squarely within the prohibition of the statutes referred to.

A careful reading of this record convinces one that the improvements sought to be made are important to the people of this state. This is one of the main primary highway intersections. In this day, when the automobile is such an important factor as a means of transportation, the curved roadway that connects one primary highway with another not only speeds traffic but prevents accidents. No homestead question is involved. The appellee does not live upon this property. He would be amply reimbursed for the property taken. It may seem unfortunate the commission's plans should be balked in this manner, but the highway commission is a creature of the legislature and under legislative control. If in the judgment of the legislature the statute is ill-advised and unnecessarily impedes the plans and purposes of the commission, it can readily repeal the statute; but if it adheres to the statute as it is now phrased, it would ill become this court to undertake its repeal by any species of circumvention. In short, the remedy in this case, if remedy is necessary, lies with the legislature and not with the court.

It therefore follows that the decision of the lower court must be, and it is hereby affirmed.

DONEGAN, C. J., and HAMILTON, KINTZINGER, RICHARDS, and STIGER, JJ., concur.