HUXLEY, INCORPORATED TOWN OF, Plaintiff, Appellant, v. M. P. CONWAY et al., Defendants, Appellees, CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY, Intervenor, Appellee.

No. 44412.

FEBRUARY 14, 1939.

Lee & Walsh, for appellant.

John DeMar, for appellees.

Hughes, O'Brien & Hughes, for intervenor, appellee.

SAGER, J.—For convenience, the defendant, board of railroad commissioners, and its constituent members, will be referred to as the board, and their co-defendant, as the railroad. The plaintiff will be spoken of as the town.

On June 28, 1935, on application of the railroad, resisted by the town, the defendant board made an order affecting a certain overhead crossing over Third avenue in the plaintiff town. Something is said in argument to the effect that Third avenue had not been legally established, and that the town itself had not been shown to have been legally incorporated. Since both of these propositions were expressly or tacitly admitted below, we pass them without comment.

We can perhaps give a clear understanding of the controversy by taking the order of the board as correct with reference to its finding of facts. It follows in substance, omitting such parts as are not pertinent:

At the time the railroad was built, that part of the town which lies south of the railroad tracks, along Third avenue, and which was later platted, had several industries which have since disappeared, leaving only one resident owner thereon. The railroad claims that the bridge needs rebuilding. The town denies this, but for the purposes of this opinion it makes no difference what the fact is. The cost of rebuilding or repairing is thought to be out of proportion to the purposes the bridge serves, and it is the claim of the railroad that it can build a cinder road or driveway on its right of way, extending east on Third avenue to a point where this cinder road extended to the north would connect with Main street which "dead ends" at the right of way. This would involve the building of approximately 600 feet of roadway. The town resisted the railroad's application for permission to make the change on various grounds, the chief of

which is, perhaps, that the crossing proposed would be downgrade and dangerous to traffic; and, because of the slope, would be a lure for children to skate or slide thereon down the incline to the railroad tracks. The bridge which the railroad seeks to abandon is 145 feet in length, and its floor 25 feet above the rails, and spans a cut 16 feet deep. The board, after analyzing the contentions of the parties as to costs, sight distances from the old and proposed crossing, and the purpose the overhead crossing serves, proceeds to say:

"It is the trend at the present time to separate grades wherever consistent and particularly at locations where railroad and/or highway traffic is heavy. The traffic over this bridge is acknowledged very light and it is difficult to justify the retention of an overhead at a considerable cost where traffic will only average three or four vehicles per day. The expense of replacement or reconstruction of bridge amounts to a considerable sum —more than appears justifiable for the traffic involved; the bridge is in need of replacement in most of its parts; and it appears that a reasonably adequate, safe and convenient grade crossing can be established and maintained."

The conclusion arrived at by the board is stated to be that the railroad "should be permitted to abandon the overhead structure now located at Third avenue and in lieu thereof said railroad company should be required to place barricades at either approach to the overhead bridge at or near their north and south right of way lines, and that a serviceable cinder roadway and crossing be constructed from the south approach of the bridge easterly to the intersection with Main street extended and thence northerly connecting with Main street as presently located. The roadway shall be cindered and shall be hereafter maintained with a serviceable cinder surface, shall be 16 feet in width, shall have grades in either direction from track as nearly uniform and as nominal as is consistent, and the crossing shall be planked. Crossbuck signs shall be erected, and all other things shall be done to afford an adequate, safe and convenient roadway and crossing at this location.

"It is our further opinion that the roadway now leading from Main street to the depot platform and facilities be maintained with a. reasonably smooth cindered surface, this in order

that children sliding on this grade may be enticed to use this roadway rather than to use the roadway leading directly to tracks."

To test the validity of this order, the town made application to the district court for a writ of certiorari. A return having been made by the board, the railroad intervened. A trial was had and evidence, in addition to the written return, was taken. This hearing resulted in the following entry by the trial court:

" * * * quashing and annulling the writ of certiorari issued in this cause, and dismissing plaintiff's petition at plaintiff's costs * * *."

It is from this order the town appeals.

█ We address ourselves to applicable rules. At the outset, it is apparent that the board has no powers except those expressly given and those incidental to or implied in the power granted. Reed v. Iowa State Highway Commission, 221 Iowa 500, 266 N. W. 47.

In Board of Railroad Commissioners v. Oregon Ry. & Nav. Co., 17 Or. 65, 19 P. 702, 2 L. R. A. 195, the rule is thus stated:

"A power conferred by the legislature upon a board of commissioners, required to be exercised with reference to the affairs of certain corporations, will not be extended by implication; and the acts which the board attempts to do under the power will not be upheld, unless the authority to do them is affirmatively shown to be included in it."

See, also, Monroe v. Railroad Commission, 170 Wis. 180, 174 N. W. 450, 9 A. L. R. 1007; Portsmouth v. Virginia, etc., Power Company, 141 Va. 54, 126 S. E. 362, 39 A. L. R. 1510; Chippewa Power Company v. Railroad Commission, 188 Wis. 246, 205 N. W. 900; Sparta Foundry Company v. Michigan Public Utilities Commission, 275 Mich. 562, 267 N. W. 736; 22 R. C. L. section 39; Taylor v. Michigan Public Utilities Commission, 217 Mich. 400, 186 N. W. 485. Appellant cites cases which might be added, but these are sufficient.

█ A search for statutory provisions under which the ruling of the board might be sustained discloses none; and since the powers of the board must be found in the code, elaboration of

the plain provisions applicable would tend to obscure rather than elucidate. The powers of the board are thus stated:

"General jurisdiction. The board shall have *general super-vision of all railroads in the state,* * * * except street railroads, * * * *except in cities and towns. It shall investigate any alleged neglect or violation of law by any such common carrier, its agents, officers, or employees.*" (Italics ours.) Section 7874, Code of 1935.

The next section having a bearing is section 7875 which reads as follows:

"Inspection—notice to repair. It shall from time to time carefully examine into and inspect the condition of each railroad, its tracks, bridges, and equipment, and the manner of its conduct, operation, and management with regard to the public safety and convenience in the state. If found by it unsafe, it shall immediately notify the railroad company whose duty it is to put the same in repair, which shall be done by it within such time as the board shall fix. If any corporation fails to perform this duty the board may forbid and prevent it from running trains over the defective portion while unsafe."

Appellees urge that section 7877 authorized the order of the board. We think that this contention cannot be sustained without a perversion of the plain language of the statute. Code sections 8020, 8021 and 8022 have to do only with highway crossings at grades outside of cities and towns, as the first of these clearly indicates. Our construction is borne out by the provisions of sections 4755-b2 and 4644-c2, which define road systems and secondary road systems. Other sections of the code are referred to but a mere reference to them is sufficient. Appellees cite section 8011. It deals with private crossings. Chapter 305, section 5910 et seq., of the code is called to our attention. It sets out the method of securing construction of viaducts in cities of 5,000 or over. The plaintiff town has a population of 370. Besides the code sections to which we call attention, appellees cite City of Albia v. Chicago, B. & Q. Ry. Co., 102 Iowa 624, 71 N. W. 541; Chicago, M. & St. P. Ry. Co. v. Old Colony Trust Co., 8 Cir., 216 F. 577; Gable v. Kriege, 221 Iowa 852, 267 N. W. 86, 105 A. L. R. 539; Wabash Railroad Co. v. Defiance, 167 U. S. 88, 17 S. Ct. 748, 42 L. Ed. 87; Eikenberry

v. Railroad Co., 174 Iowa 6, 156 N. W. 163; Bear v. City of Cedar Rapids, 147 Iowa 341, 126 N. W. 324, 27 L. R. A. (N. S.) 1150; McAllen v. Hamblin, 129 Iowa 329, 105 N. W. 593, 5 L. R. A. (N. S.) 434, 6 Ann. Cas. 980; Tiedt v. Carstensen, 61 Iowa 334, 16 N. W. 214; Hatch v. Board, 170 Iowa 82, 152 N. W. 28. None of these cases support the ruling. Appellant town argues, and we think rightly so, that the decision of the board was in excess of its jurisdiction, and an invasion of the rights and duties of the town as a municipal corporation. It predicates its argument upon section 5938, which reads as follows:

"Cities and towns shall have power to establish, lay off, open, widen, straighten, narrow, vacate, extend, improve, and repair streets, highways, avenues, alleys, public grounds, parks and playgrounds, wharves, landings and market places within their limits."

This section vests municipalities with plenary jurisdiction of streets within their borders. The duty of cities and towns to maintain them in a safe condition for public use is too well settled to call for the citation of authorities. The effect of the board's ruling is not only to extend Main street across the rail road tracks, but to lay out a private roadway of 600 feet on the company's right of way. It would require the owners of a platted area, with an approved and accepted street under the control and supervision of the town, to travel on a private right of way, with such concessions as the railroad chose to make. If it be said that the board can regulate such matters, we get farther away than ever from the board's powers and jurisdiction. It certainly has no control over streets and alleys generally, nor has it the power to provide for their maintenance and upkeep. In case of injury to the traveler on this cindered path along the right of way, whose is the responsibility? And if the board may establish a street in the manner proposed to be done here, where shall the limits of its authority be set? In what is said, no criticism is implied or intended against the board. The ruling seems to have been made in a good faith effort to solve a practical difficulty. But the trouble with it is that we find no authority for its action. The case seems to be a hard one from the railroad's point of view, but the remedy lies with the legislature and not with this court.

274

We hold that the defendant board exceeded its jurisdiction in making the order questioned here, and that such order is void.

One other matter remains to be considered. The record, without disclosing just what the transaction was, leaves the impression that there was either an express or implied contract between the town and the railroad, or perhaps some order of the federal court affecting this particular overhead bridge on Third avenue. If there be any such, this opinion is not intended to, nor shall it, be construed as affecting any rights that may exist under and by virtue of any contracts between the parties or any decisions of court which may have determined any controversy between them. And as to any such, the parties are relegated to such rights as they have thereunder.

It follows that we hold that the trial court should have sustained the writ of certiorari sued out by the plaintiff, and failing therein, its ruling should be reversed, subject to any rights that the parties may have under contract or decree, as above indicated.

The cause is, therefore, reversed.—Reversed.

HAMILTON, OLIVER, RICHARDS, BLISS, MILLER, and HALE, JJ., concur.