CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY, appellant,
v. IOWA STATE COMMERCE COMMISSION (members); JOHN A.
TALLMAN, chairman, appellees.

No. 49023.

(Reported in 80 N.W.2d 351)

JANUARY 15, 1957.

A. B. Howland, J. H. Martin, and B. A. Webster, Jr., all of Des Moines, for appellant.

Conrad A. Amend, Iowa Commerce Counsel, and Richard Hudson, Assistant Commerce Counsel, both of Des Moines, for appellees.

THOMPSON, J.—On December 12, 1954, the city of Iowa City, acting under the provisions of chapter 387 of the Code of 1954, adopted its Ordinance No. 2096, which determined that the plaintiff-appellant herein should erect a viaduct upon Dodge Street in that city across the plaintiff's railroad tracks, including the approaches thereto. The ordinance also provided for the width of the proposed viaduct, for sidewalks along each side and for the clearance over the tracks, the length of the approaches and the nature of the material to be used in paving the viaduct and approaches and the strength of the viaduct construction. All this was stated to be according to Plan Sheet No. 1 on file in the office of the city clerk.

On March 24, 1955, the city filed with the defendant-appellee its application reciting the passage of the ordinance as above, asking that the matter be set for hearing before the Commission, and that upon the hearing it be determined that the construction of the viaduct as ordered by the ordinance is "necessary for the public safety and convenience", that the plans as filed with the city clerk be approved and that the plaintiff "be ordered to replace the present bridge with a new structure in accordance with Plan Sheet No. 1 now on file in the office of the city clerk of Iowa City, Iowa."

For convenience and brevity, the plaintiff, the Chicago, Rock Island & Pacific Railroad Company, will hereinafter be referred to as the Company, and the defendant Iowa State Commerce Commission as the Commission. The other defendants are the members of the Commission, and their rights will be determined by the rights of the Commission.

The question for determination here is a narrow but difficult one. It is raised by the second amendment to the answer of the Company to the above application of the city for a determination by the Commission. The answer first filed by the Company challenged the necessity of the proposed viaduct for the public safety and convenience. The first amendment to this answer set up a contract made on June 13, 1899, between the Company and the city which it alleged controlled the rights of the parties; and the second amendment, which raises the important question in the case, pleaded that Dodge Street, over which the new viaduct would pass, is within four blocks of Summit Street. It was further alleged that the Company has been required to construct, and has so constructed, a viaduct across its tracks at Summit Street; and that by reason of section 387.2 of the Code of 1954, neither the city of Iowa City nor the Commission had the power to require another viaduct at Dodge Street because of the "fourth street" limitation contained in this Code section. Since section 387.2 is of great importance in this case, we set it out in full herewith:

"387.2 Limitations. The approaches to any such viaduct or underpass shall not exceed a total distance of eight hundred feet, but no such viaduct or underpass shall be required of the same railroad company or companies, on more than every fourth street running in the same direction, and no railroad company shall be required to build or contribute to the building of more than one such viaduct or underpass, with its approaches, in any one year; nor shall any viaduct or underpass be required until the Iowa state commerce commission shall, after examination, determine the same to be necessary for the public safety and convenience, and the plans of said viaduct or underpass, prepared as hereinafter provided, shall have been approved by said commission."

The Commission, upon hearing, was asked by the Company to hold that it had no jurisdiction to determine the matter of necessity of the proposed viaduct for the public safety and convenience, since it appeared without dispute that Dodge and Summit Streets are within four blocks of each other and run in the same general direction. This it refused to do; but in-

stead held that it had no jurisdiction to determine this question, but that its only function was to decide the question of necessity and, if it found such necessity, to approve or disapprove the plans submitted. The Company thereupon brought certiorari to the Polk District Court, and upon an adverse decision there has prosecuted this appeal.

██ I. The sole question for our determination here is this: Should the Commission have taken jurisdiction to say whether the "fourth street" prohibition of the statute will ultimately and at all events prevent the construction of the viaduct and so have refused to hold hearings to decide the question of necessity for the public safety and convenience and for approval or disapproval of the plans; or was it acting illegally and in excess of its jurisdiction in holding that it had no concern with such question and no jurisdiction to consider it, and so in deciding to hold hearings to determine necessity and the appropriateness of the plans? The matter of the contract, raised by the first amendment to the answer filed before the Commission, is not seriously urged here, and in any event it would have no merit. "The question of the binding effect of contracts is one of law not cognizable by the commission." Borough of Irwin v. Pennsylvania Public Utility Comm., 142 Pa. Super. 157, 161, 15 A.2d 547, 549.

But it is forcibly urged by the Company that the Commission should have considered the "fourth street" limitation of the statute, and that if it had done so, under the undisputed facts it must have held that it had no jurisdiction to go further with its hearings. It is contended that it acted in excess of its jurisdiction by failing to take jurisdiction of the question; or perhaps it is meant that by failing to decide the limitation it will be acting in excess of its jurisdiction in holding hearings. The real argument is, we think, not that the Commission refused to determine its jurisdiction, but that it determined it erroneously.

██ ██ It may be, of course, that the action of the Commission will result in added expense and loss of time to the Company. If it is sound in its contention that the "fourth street" exclusion will eventually and certainly prevent the city from going through with its plans to require the construction of a new viaduct, any hearings on the question of necessity will be

only so much wasted effort. But the Commission has only those powers expressly granted to it by statute and those reasonably incidental to and implied therefrom. Incorporated Town of Huxley v. Conway, 226 Iowa 268, 271, 284 N.W. 136; Merchants Motor Freight v. State Highway Comm., 239 Iowa 888, 890, 32 N.W.2d 773. We think the matter of determining the applicability and effect of the limitation of one viaduct to every fourth street, under the terms of the governing statutes, is beyond the express or implied powers of the Commission, and that it was correct in so holding.

It is important to note that Code chapter 387 is concerned with the powers of cities rather than of the Commission. The method by which cities may compel railroads to construct viaducts and by which they may be kept in repair is fully set out. There is no reference to the Commission in the entire chapter, except in section 387.2, supra. Here it will be noted that the reference is contained in one of the limitations upon the power of cities to require the construction. These limitations are: 1, that no approaches shall exceed a total distance of eight hundred feet; 2, that no viaduct or underpass shall be required of the same railroad company on more than every fourth street running in the same direction; 3, that no railroad company shall be required to contribute to the building of more than one viaduct or underpass in any one year; and 4, that no viaduct or underpass shall be required until after the Iowa State Commerce Commission shall determine the same to be necessary for the public safety and convenience, and approve the plans. The matter of securing approval of the proposed improvement by the Commission is only one of four limitations on the power of the cities to require building of viaducts by railroads.

In considering the question raised by the Company, our own statute is of course controlling. Both parties concede that there is no Iowa precedent upon the point. So, while authorities cited from other jurisdictions are of course of interest to us, and may be persuasive, they are not controlling, and if not decided under closely similar statutes are of little value. We are asked here to say that the Commission should determine that the city of Iowa City will be barred from requiring the construction of the viaduct because of the second limitation set

out above. In other words, it is urged that the Commission should set itself up as the judge of whether the other limitations have been complied with before it acts in connection with the fourth limitation. The contention is that the Commission should take jurisdiction to determine whether the other restrictions have been complied with before it makes its own finding as to necessity, safety and convenience, which itself is only another restriction. We find no indication in the statute that it was intended to give the Commission such power.

■ This conclusion is considerably strengthened by section 387.15, a part of the same chapter of the Code. Here it is provided that if any railroad company refuses to comply with a city ordinance passed under the provisions of chapter 387, the city may enforce the construction of the designated viaduct by proceedings in mandamus, such actions to have precedence over other civil business of the courts. The legislature has thus provided for determination of the matter by the courts. If in the mandamus action the Company can show that the "fourth street" limitation is effective, we must assume its rights will be protected. But we do not think the Commission has the right to refuse to function as required by the fourth limitation above because it may think some other limitation has not been met, or that it has any duty under the statute to inquire into such matters. Chapter 387 seems clearly to reserve this inquiry for the courts.

II. The Company has cited several authorities from other jurisdictions which it thinks support its position. Since the matter is one of first impression in Iowa, and our conclusions are adverse to the appellant, the interests of fairness require some analysis of these cases.

The authority first cited is Pittsburgh Railways Co. v. Public Service Comm., 115 Pa. Super. 58, 174 A. 670. Here the Commission had approved the right of Allegheny County to operate motor busses in an area already served by the railway company. A statute required that the approval of the Commission be obtained before a municipality could enter into competition with an existing utility. The Commission refused to determine whether the county had the right to operate busses, and granted the certificate. The Superior Court reversed this action,

saying that the county had no right to operate motor busses, and the Commission should have taken jurisdiction to so determine; that is to say, it should not have granted a certificate to operate these vehicles when the county had no right whatsoever under existing statutes to do so. The case would be analogous to the one at bar if the city of Iowa City had no statutory authority to require the construction of viaducts. We think there is a difference between a hearing requested by a body having general authority to do the thing it seeks, where the question is, as here, merely whether it has complied with all limitations, and the case of a hearing asked by a body having no authority whatever to do the thing it is asking the Commission to approve, or implement. Thus if we had no statutes giving cities the right to require the building of viaducts, we apprehend it would have been the duty of the Commission to refuse to take any part in an attempt wholly void on its face. But, the city having the general power to require such construction, we think the statute limits the proper jurisdiction and function of the Commission to questions of necessity, safety and convenience. There is no indication that the legislature intended to set it up as a judge of whether other limitations might eventually enable the railroad to prevail over the city and prevent the building of the viaduct. Section 387.15 gives relief by court action, and we think offers the proper and only forum for the trial of issues such as whether the prescribed conditions precedent have been met.

In re Northwestern Indiana Telephone Co., 201 Ind. 667, 171 N.E. 65, also cited by the Company, seems to have no bearing on the question before us, except for some broad general language which had little relation to the facts. The actual points decided were first, that the City of Valparaiso and the City Council and Chamber of Commerce of that city might appeal from a ruling of the lower court which permitted one utility to purchase the capital stock of another; and second, that a statute giving the courts the right to review findings of fact made by the Public Service Commission and to review and control its discretion was to that extent unconstitutional. Neither question seems to have any bearing on the issue now before us.

Trybulski v. Bellows Falls Hydro-Electric Corp., 112 Vt. 1, 20 A.2d 117, holds no more than that the Public Service Com-

mission had no right to determine the question of damages caused to plaintiff's lands by a dam erected by the defendant-company. This, the Vermont Supreme Court said, was a matter for the courts to determine; the law gave the Commission no jurisdiction over such a claim. Security State Bank of San Juan v. State, Tex. Civ. App., 169 S.W.2d 554, 560, although also cited by the Company, seems to come nearer to supporting the Commission's position. A bank which was in liquidation attempted to reopen, without securing the consent of the State Banking Board. The Board determined that the bank had no right to so reopen without its consent, and after a hearing denied consent on the grounds of lack of public necessity. The Texas Court of Civil Appeals said: "Of course, the Board had no power to adjudicate the legal right of the Bank to reopen without its sanction."

Thompson Products, Inc. v. National Labor Relations Board, 6 Cir., 133 F.2d 637, holds only that a tribunal empowered to hear controversies is likewise empowered to pass upon its right and jurisdiction to hear them. We have pointed out that in the case at bar the real complaint of the Company is not so much that the Commission refused to pass upon its jurisdiction as that it determined it wrongfully.

In Borough of Irwin v. Pennsylvania Public Utility Comm., supra, 142 Pa. Super. 157, 15 A.2d 547, a statute empowered the Commission, when it granted a certificate of public convenience for the abandonment of services by a utility, to attach reasonable conditions, so long as such conditions were proper under the utility's franchise or under contracts between it and the municipalities it served. Having given a street railway company permission to discontinue service, the Commission was asked to attach as a condition a provision that the company remove the tracks from a certain street. The Commission refused so to do, finding that the company in question did not own the tracks. The Pennsylvania court said (page 161 of 142 Pa. Super., page 549 of 15 A.2d): "In imposing conditions to its consent to abandon services, etc., the commission may inquire whether the utility is under any duty to do, or is relieved from doing, i.e., by lack of ownership, the thing which is basically essential for action which the commission is asked to take * * *."

We think the Pennsylvania court in the last-quoted language has delineated a governing distinction between the authorities relied upon by the appellant-company and the case before us. If the Commission itself is to determine the desired action to be taken, it must then decide whether there is any obstacle, either legal or factual, to the order sought. Thus, in the Pennsylvania case last cited, the permission to abandon and the conditions attached were acts of the commission itself, and it necessarily determined whether such conditions were proper. So, if the Iowa Commerce Commission were itself the source of the power to require the building of the viaduct in question here, it would devolve upon it, as a preliminary, to determine the "fourth street" and other limitations. But it does not have that power. The city of Iowa City is given the right, by statute, to require the construction. It is not for the Commission to say whether the city is within its rights; whether the "fourth street" limitation, the "one year" limitation, the "800 feet of approaches" limitation, have been complied with. If it were ordering the building of the viaduct, of course it would decide these things. But its sole function and sole authority in the premises is to say whether the proposed structure is necessary for the public safety and convenience. There is no indication in the language of the statute that the legislature meant to give it any further power or duty, either expressly or by any reasonable implication. It is the city of Iowa City, not the Commission, which may order the building of the viaduct, and it is restricted in so doing by certain limitations. In attempting to comply with at least one of these, it has requested the Commission to determine the necessity of the viaduct for the public safety and convenience. When, and if, the Commission finds it is so necessary, the issue between the city and Company as to other limitations may arise to be determined by the courts. Issues of waiver, of estoppel, of contract and possibly many others may arise, and these are not for the Commission to decide.

We find no error in the judgment of the trial court.—Affirmed.

All JUSTICES concur except LARSON, J., who takes no part.