105 N.W.2d 633 (1960)
CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY; Chicago Great Western Railway Company; Chicago and Northwestern Railway Company; Chicago, Milwaukee, St. Paul and Pacific Railroad Company; Chicago, Rock Island and Pacific Railroad Company; Illinois Central Railroad Company; Minneapolis and St. Louis Railway Company; The Atchison, Topeka & Santa Fe Railway Company; Cedar Rapids and Iowa City Railway Company; Des Moines & Central Iowa Railway Company; Ft. Dodge, Des Moines & Southern Railway Company; Great Northern Railway Company; Mason City & Clear Lake Railroad Company; Union Pacific Railroad Company; Wabash Railroad Company; and Waterloo Railroad Company, Appellants,
v.
IOWA STATE COMMERCE COMMISSION; Ray H. Thompson, Chairman; John M. Ropes and John A. Tallman, members of Iowa State Commerce Commission, Appellees,
Ruan Transport Corporation, Intervener-Appellee,
E. F. Bock, d/b/a Bock Transport Co.; Les Burris & Bernard Jacobs, d/b/a Burris & Jacobs; William B. Conley, d/b/a Conley Transport; A. D. Curry; Harvey Daufeldt, d/b/a Daufeldt Transfer; Harold Dickey; Gordon Halterman and Claude Henderson, d/b/a H & H Transport Co.; Jet Transport Company; Thomas Lonergan & Donald Lonergan, d/b/a Lonergan Transportation; Herman P. Luppes, d/b/a Luppes Oil Co.; Henry Hugen and Bert Hugen, d/b/a Oskaloosa Oil Company; Petroleum Transport Service, Inc.; Fred Severson; Fred J. Stockberger, d/b/a Stockberger Transfer and Storage; Melvin W. Cronbaugh, d/b/a Tubbs Oil Company; John Willcoxson; and Clarence H. Wilson, Interveners-Appellees.
No. 50010.
Supreme Court of Iowa.
October 18, 1960.
Rehearing Denied December 16, 1960.
*634 Don McDevitt, Chicago, Ill., and A. B. Howland, Des Moines, for appellants.
Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for intervener-appellee Ruan Transport Co.
D. C. Nolan, Iowa City, for interveners-appellees E. F. Bock, et al.
Kent Emery, Des Moines, for interveners-appellees Eldon Miller, Inc. and Iowa Motor Truck Assn.
Waldo F. Wheeler, Iowa Commerce Counsel, Robert R. Rydell, Asst. Commerce Counsel, Des Moines, for Iowa State Commerce Commission, appellee.
GARRETT, Justice.
This is an action in equity by certain railroad companies against the Iowa State Commerce Commission to set aside a decision and order of said commission entered July 11, 1958 fixing rates for the transportation of petroleum products by rail in intrastate commerce in Iowa and asking the court to declare that the commission has no power to prescribe minimum rates. Certain motor carriers and the Iowa Motor Truck Association intervened seeking to uphold the order.
The action was brought under section 474.28, Iowa Code, 1958, I.C.A., to set aside an order requiring all railroad carriers of petroleum and petroleum products in tank cars to cancel their tariff, Western Trunk Lines, 442-B, which reduced by 20% to 30% the rail charges previously in effect for the transportation of such commodities between Iowa Points for distances in excess of 75 miles.
The commission suspended the new rates for the maximum period provided by statute during which period a hearing was held. After the expiration of the statutory suspension period the commission announced it had been unable to reach a decision and was permitting the rates to become effective on April 6, 1958, but that such action did not constitute approval of the new rates.
*635 Less than four months later the commission issued an order directing cancellation of the tariff and prescribing new rates for transportation of such petroleum products. The new order directed that for all shipments moving 150 miles or less, in Iowa, the rates for rail transportation must be on a parity with, and not less than the rates published in a particular truck tariff for transportation of such commodities over the highways of the state but that railroad charges for transportation of such products moving distances of more than 150 miles within the state might be 1½ cents per 100 pounds below those of the truck lines.
It is of more than passing interest to note that the evidence discloses the almost complete loss by the rails to the truck lines of the transportation business in controversy. Exhibit 12 discloses the percentage of gasoline moving by rail in the years 1940 to 1954. This percentage was 88.31% of the total consumption in 1940; in 1947 it was 23.17% and in 1954 only 2.08%.
In an effort to recapture some of the business they had lost the railroads filed the reduced tariffs applicable to hauls of over 75 miles and proceeded to operate thereunder. The railroads feeling aggrieved by the refusal of the commission after a hearing to allow their reduced rates to stand, brought action in the district court where, pursuant to stipulation, the case was tried upon the record before the commission which included the testimony of witnesses and many exhibits. On September 2, 1959 the trial court entered its judgment and decree sustaining the action of the commission and from that judgment and decree the plaintiffs have appealed.
I. Although its right to do so was challenged, the court proceeded to try the case pursuant to Section 474.28 which provides: "Any railroad aggrieved at any rule, order, or regulation made by the commission may institute proceedings in any court of proper jurisdiction to have the same vacated. If found by the court, after due trial, not to be reasonable, equitable, or just, and if upon an appeal from any rule, order, or regulation of the commission the complaining railroad is successful in having such rule, order, or regulation vacated, the aforesaid penalty shall be set aside."
The commerce commission and the intervenors contend this section does not apply to orders of the commission with respect to rates, and rates are not mentioned in the statute. On the other hand, it does provide that "Any railroad aggrieved at any rule, order, or regulation made by the commission may institute proceedings * * * to have the same vacated." We hold that this section places upon the courts the duty to determine whether a challenged order of the commission is reasonable, equitable or just. Lowden v. Iowa State Commerce Commission, 229 Iowa 526, 294 N.W. 749 and cases cited.
The trial court tried the case as an action in equity and determined that the commission's order was reasonable, equitable and just. We do not agree with that holding and must therefore reverse.
II. Appellants contend the commerce commission has no power to establish minimum rates, as distinguished from reasonable maximum rates to be charged by common carriers by rail within the state. With this contention we agree. The commission has no powers except those expressly given and those incidental to or implied in connection with the powers granted. Incorporated Town of Huxley v. Conway, 226 Iowa 268, 284 N.W. 136; Reed v. Iowa State Highway Comm., 221 Iowa 500, 266 N.W. 47; Chicago, R. I. & P. R. Co. v. Iowa State Commerce Comm., 248 Iowa 207, 80 N.W.2d 351.
Section 479.66, Code 1958, I.C.A., authorizes the commission to conduct hearings concerning the propriety of certain rates. Section 479.68 provides "On such hearing the commission shall establish the rates in whole or in part, or others in lieu thereof, which it shall find to be just and *636 reasonable." This section taken alone appears to be broad enough in its terms to confer power to establish any rate the commission found to be just and reasonable. Taken in connection with other statutes affecting rates, however, we must conclude and hold that section 479.68 is a procedural statute and confers no authority to fix other than maximum rates which railroads may charge under the facts in this case.
The Iowa Board of Railroad Commissioners was created by Chapter 77 of the Acts of the 17th General Assembly in 1878. It was succeeded by the present Commerce Commission. This section was adopted in 1923 by the 40th General Assembly, along with sections 479.66 and 479.67 relating to the power to revise rates and suspension of rates respectively. The following sections which were in substance embraced in the original act regulating carriers are still in full force and effect. Section 479.71 provides in part: "The schedules of reasonable maximum rates of charges for the transportation of freight and cars, together with the classification of such freights now in effect, shall remain in force until changed by the commission according to law, * * * shall be taken as prima facie evidence in all courts that the rates fixed therein are reasonable and just maximum rates of charge for which said schedules have been prepared." Section 479.72 provides that when complaint is made "that the rate charged or published by any railway company, or the maximum rates fixed by the commission in the schedule of rates made by it, or the maximum rate fixed by law, is unreasonably high or discriminating, the commission shall investigate the matter * * *." Section 479.74 provides: "After such hearing and investigation, the commission shall fix and determine the maximum charges to be thereafter made by the railroad company, * * *." It appears quite obvious that the legislature did not intend to grant the commission power to prescribe minimum rates when it left the above restricting provisions upon the statute books.
In 1934 the Board of Railroad Commissioners, predecessors to the commerce commission, made an order that "* * * this commission is not invested with power to prescribe minimum rates. The rail carriers may establish rates less than the maximum rates as fixed by this commission. * * *" Such interpretation by the administrative body prevailed for twenty-five years and the legislature did not see fit to take any action to correct it if it was not in accord with the legislative intent. It is further to be remembered that when the railroad commission was empowered to fix a schedule of rates the railroads except for purely local items, had a monopoly upon the transportation business, and the purpose of the regulation acts was to prevent unjust maximum charges and discrimination by rail carriers.
In re Public Utilities Commissioner of Oregon, 201 Or. 1, 268 P.2d 605, 615, we find the statute and the facts involved are in substance identical with this case. The Public Utilities Commissioner of Oregon fixed a hearing to determine the propriety of the rates to be charged by the railroads, and the latter sought a writ of prohibition to prevent the holding of such a hearing. The ground for the writ was that the Commissioner had no power to fix minimum rates, and therefore had no right to hold a hearing on the question whether the rate was too low. The trial court dismissed the petition for the writ, but the Oregon Supreme Court reversed, with directions to grant it. It quoted the governing statute, which said that if any rates were in any respect unreasonable and upon complaint and investigation they are found to be so, the Commissioner should have power "to fix and order substituted therefor such rate or rates * * * as [he should] have determined to be just and reasonable * * *." The court then proceeded to discuss and quote at length from In re The Chicago, St. Paul and Kansas City Railway Company, 2 Interstate Commerce Reports 231. The contention there was that the rates fixed by the respondent railroad company were so low *637 as to be unremunerative to it, and therefore were illegal under the Interstate Commerce Act, 49 U.S.C.A. § 1, which required all rates to be "reasonable and just." The Interstate Commission said: "Possibly, if the statute were to be interpreted without any aid from its history, and with no other knowledge of its purposes, aims and ends than such as may be derived from its provisions, a holding that a rate unreasonably low was forbidden might be justified, or at least might be urged upon plausible arguments. But every statute is to be read in the light of its history and of the evils it was intended to redress. * * * It may be affirmed with entire confidence that the Act was not passed to protect railroad corporations against the misconduct or mistakes of their officers, or even primarily to protect such corporations against each other. * * * Everywhere in the Act the primary purpose apparent in its provisions is that individuals dealing in matters of transportation with the carriers regulated by it shall not * * * be wronged by arbitrary conduct or by favoritism, or be subject to extortion. It is to this end that the Act declares that all charges made by the carriers it regulates shall be reasonable and just, and the purpose of the declaration is to establish the rule that the charges shall not be extortionate. If such was the primary purpose of the statute, as unquestionably it was, then the proper meaning of the terms `just and reasonable' as employed in it is apparent. They were employed to establish a maximum limitation for the protection of the public, not a minimum limitation for the protection of reckless carriers against their own action."
The commission does not have the power to adjust rates of rail carriers for the protection of competing carriers. This is also the federal rule under the Transportation Act of 1958. As supporting the identical rates involved in the proposed tariff, cases from several states may be cited including Chicago, B. & Q. Railroad Co. v. Herman Bros., 164 Neb. 247, 82 N.W.2d 395, and the companion case cited at 164 Neb. 265, 82 N.W.2d 405. The cited cases involve proposed rates generally 1½ cents per 100 pounds less than truck rates for distances of 75 miles and more. The state railroad commission and the courts upheld the rates. The facts in the above case are similar to those in this case. An interstate commerce case in point is Ward Transport v. United States, 348 U.S. 979, 75 S.Ct. 570, 99 L.Ed. 762.
III. Appellees offered evidence purporting to show that the proposed rail rates were noncompensatory to the railroads and unfair to the truck carriers. To determine this question which is moot in view of our holding that the commission has no authority to fix other than maximum rates, it would be necessary to know the truck carrier operating costs. There is no sufficient showing of such costs nor was there evidence the truck carriers suffered any reduction in the volume of their business currently handled as compared with other years even though the challenged rates had been in effect for about a year.
For the reason that the commission has no statutory authority to fix minimum rates and because the rates fixed by the commission are not reasonable, equitable, or just in consideration of the public interest, the decision of the trial court is reversed.
Reversed.
All Justices concur, THOMPSON, J., specially.
THOMPSON, Justice (concurring specially).
I concur in the result of the majority opinion and in its reasoning and authorities, except for Division III. Here there is an implication that if there was a sufficient showing of the truck operating costs relief may be granted in a proper case on the ground that the proposed rates are unfair to a competing industry. I think this is not the law. I find nothing in our statutes which permits the Commission to strike *638 down a rate because it is unfair to a competitor.
In 1940 the Congress of the United States, by statute, directed the Interstate Commerce Commission to "preserve to each form of transportation its inherent advantages." It was recognized there must be statutory authority for considering rates charged by competing carriers. We have no such statute. It is of interest to note that in 1958 the Congress disavowed its former action. In the Transportation Act of 1958 it is now provided: "Rates of a carrier shall not be held up to a particular level to protect the traffic of any other mode of transportation."
I realize determination of the points discussed is not necessary for the decision made. But I think we should not leave room for an inference that the Commission has power to fix rates in order to protect other competing carriers.