**TRI–COUNTY ELECTRIC ASSOCIATION, INC., Appellant (Respondent below),**

v.

**The CITY OF GILLETTE, Appellee (Petitioner below).**

**No. 4329.**

Supreme Court of Wyoming.

July 29, 1974.

4

Cecil K. Hughes, Sundance, for appellant.

Arthur Kline, Cheyenne, and William G. Watt, Gillette, for appellee.

Carl L. Lathrop and David D. Uchner of Lathrop, Uchner & Mullikin, Cheyenne, for amicus curiae, Wyoming State Rural Electric Assn.

Thomas S. Smith of Smith, Stanfield & Mendicino, Laramie, for amicus curiae, Wyoming Assn. of Municipalities.

Clarence A. Brimmer, Atty. Gen., and Richard J. Moen, Special Asst. Atty. Gen., Cheyenne, for amicus curiae, Public Service Comm. of Wyoming.

Before PARKER, C. J., and McEWAN, GUTHRIE, McINTYRE and McCLINTOCK, JJ.

Mr. Justice GUTHRIE delivered the opinion of the court.

This is an appeal from a decision of the district court reversing an order of the Wyoming Public Service Commission. For brevity Tri-County Electric Association, Inc., will be described as Tri-County; the City of Gillette will be described as the city; and the Wyoming Public Service Commission will be described as the commission.

On May 5, 1960, the city and Tri-County entered into an agreement which provided for the purchase of certain facilities and equipment which were exchanged by the parties in areas where they were to continue service and it was generally agreed that the city should service those areas which "are by nature a part of the municipality" and that Tri-County should service the rural area surrounding the city service area.

The parties at that time agreed as to the mutual service areas and the agreement further provided it was subject to the approval and authorization of the commission.

On August 15, 1960, the commission upon application by the city approved the agreement and issued a certificate of public convenience and necessity to Tri-County, covering the area of the so-called Pioneer Addition, which is the area in controversy here.

On June 17, 1969, the city passed an ordinance extending its limits to include Pioneer Addition on the northwest side of the city. On June 9, 1970, the city passed an ordinance defining the boundaries of the city which encompassed all prior annexations. On July 10, 1970, the city passed an ordinance forbidding any person or corporation to construct any electric lines within the limits of the City of Gillette as it then existed or might hereinafter be enlarged. There was at that time no electric service being provided by either of these parties in the Pioneer Addition. On June 16, 1970, the city declined to grant Tri-County a franchise or easement in this area on the ground the city had preempted the field of electrical service. Thereafter Tri-County erected electric lines to serve people residing in Pioneer Addition, which is within the extended corporate limits of the city, and commenced service to them. This service was supplied upon demand and request of those residents of Pioneer Addition.[1] The record does suggest application had been made to the city by at least one applicant and it failed to supply such service.

On July 23 the city filed with the commission an application to amend its certificate of public convenience and necessity in order to supply electrical service to inhabitants of Pioneer Addition and further requested that this area be deleted from the certificated territories of Tri-County. After the hearing thereon the commission entered the following order:

### FINDINGS OF FACT

"1. The City is an operating public utility as defined by Section 37–1, Wyoming Statutes, insofar as concerns the electric service area certificated to it by us outside its corporate limits; and its electric utility operations inside its corporate limits are exempted thereunder from our jurisdiction.

"2. Tri County is an operating public utility under Section 37–1 whose certificated area includes the area certificated to it by us in and around the City.

"3. The areas more recently annexed by the City and which are also within Tri County's certificated service area from which it requests we unilaterally order Tri County to withdraw are:

"(a) the area comprising the northeastern part of the City in which there is no electric service at present.

"(b) the Pioneer addition in the northwest corner of the City served by Tri County.

"(c) the area south of the City adjacent to U. S. Highway 90 in which the City has extended service.

"(d) the City-owned tract of land located approximately one and one-half miles southeast of the City wherein the City proposes to construct its sewage disposal plant.

"4. The City's service area outside the city limits remaining under our jurisdiction is not in the evidence of this case.

"5. The facts of this case are different in important respects from those of any cases concerning territorial controversies decided by the commission and those appealed to the Wyoming Supreme Court,

---

1. The following language appears in Re Chicago and Northwestern Railway Company, 75 PUR 3d 408, 416 (Apr. 2, 1968):

"It is axiomatic in public utility law that it is the duty of a public utility, in response to valuable rights and considerations granted to it, to provide adequate, indiscriminate, and continuous service to the public. * * * "

as those cases involved jurisdictional service where the commission could balance the effect on each involved utility, where necessary by exchange of customers, territory, and facilities.

"6. In this case we do not have the utility area, service, and rate control necessary to make certificated area adjustments in the public interest pursuant to existing law, the court decisions and our established policies.

"7. Since Tri County is providing adequate service under reasonable rates and its users in the controverted areas request continuation of its service, there was no utility basis presented supporting requiring it to discontinue service therein.

"8. The parties should work now and in the future to avoid duplicating electric service which results in haphazard, unstable, wasteful and expensive service, the burdens and detriments of which must be borne by the public.

"9. The proposed extension of service by the City to its proposed sewage disposal plant is exempted from our regulation under the provisions of Section 37-1.

### "CONCLUSIONS OF LAW

"1. We have jurisdiction under the evidence of this case over the utility operations and certificated area of Tri County.

"2. At the time of our order in Docket No. 9390 dated August 15, 1960, we had jurisdiction over both Tri County and the City; and the certificates granted therein are in effect.

"3. Wyoming law provides that a utility serve adequately, safely and efficiently.

"4. A utility cannot be required by us to discontinue its utility service unless there is a showing its service is inadequate and deficient.

"5. Wyoming law requires us to ascertain that the executed agreements to which a utility is a party meet the public interest.

"6. We do not have jurisdiction over furnishing of service by a person to himself as the same is exempted by subsection (h) of Section 37-1.

"7. We do not have jurisdiction over municipally owned and operated utilities within the city limits.

"8. All required notices have been given and public hearing held."

The city then filed its petition for review and injunctive relief and the matter was heard in the district court upon the record, and the following judgment was entered:

"This matter having come on for hearing on July 30, 1973, in Gillette, Wyoming, upon the Petition for Review and for Injunctive Relief filed herein by the petitioner, the petitioner appearing by William G. Watt and Arthur Kline, its attorneys and the respondent Wyoming Public Service Commission appearing by its attorney, Richard J. Moen, and the respondent Tri-County Electric Association appearing by its attorney, Cecil Hughes, and the Court, having heard the argument of counsel, having considered the briefs filed by the parties, having reviewed the record of proceedings before the Wyoming Public Service Commission, and being fully advised in the premises, does find generally for the petitioner.

"The Court does further find that the respondent, Tri-County Electric Association, has no right to supply electric service to persons residing within the city limits of the City of Gillette without a franchise from the City and has no right to use the streets and alleys of the City without a franchise, easement or other authority from the City, and that an order requiring the respondent Tri-County Electric Association to cease and desist from supplying such electric service should be entered herein.

"The Court does further find that the Commission's Memorandum Opinion and Order is not in conformity with law and that the matter should be remanded to

the Commission for such proceedings as it may deem necessary to delete from Tri-County's certificated territory those portions thereof lying within the corporate limits of the City of Gillette.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that this matter be and the same is hereby remanded to the Wyoming Public Service Commission for such proceedings or action as the Commission may deem necessary in view of the findings of this Court.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the respondent Tri-County Electric Association be and it is hereby directed to cease and desist supplying electric service to the residents of Pioneer Addition now being furnished such service by it within thirty days from the date of the entry of this order, and that at the expiration of such thirty-day period, the respondent Tri-County Electric Association be and it is hereby permanently enjoined from further supplying or rendering electric service to such persons.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the respondent Tri-County Electric Association be and it is hereby enjoined from initiating any new electric service to persons residing within the city limits of the City of Gillette without first obtaining the necessary franchise authority from the City Council of the City of Gillette."

The city's petition for review upon which the court's judgment was based alleged that the order was not in conformity with the law and contrary to the provisions of Art. 13, § 4, Wyo.Const.., § 15.1–63, W.S.1957, and the ordinance adopted by the city on July 10, 1970, and as a further basis therefor alleged that the order was arbitrary, capricious, and characterized by abuse of discretion and the findings of fact and conclusions of law were not supported by substantial evidence. Additionally, application was made for an injunction restraining Tri-County from supplying elec-

tricity to persons residing within the corporate limits of the city and the determination as a matter of law that Tri-County had no right to supply electricity to persons residing within the corporate limits.

Although the parties to this proceeding, including amicus curiae, envision and suggest many questions and seek many answers to what they deem problems in this proceeding, this court must confine itself to what are basic issues without excursions into the suggested peripheral fields.

A disposal of this matter involves the resolution of the questions of whether the commission properly exercised its jurisdiction and if the trial court was within its power in reversing this order, and secondly whether upon this record the trial court had power to make the disposal and adjudication of this matter as it did.

## PROPRIETY OF THE COMMISSION'S ORDER

Review of an administrative action under an appeal is sharply limited by our statute, § 9–276.32(c) W.S.1957, 1973 Cum. Supp. Numerous decisions reflect the view that such appeals are confined to the administrative record, United States v. Carlo Bianchi and Company, 373 U.S. 709, 83 S. Ct. 1409, 1413, 10 L.Ed.2d 652; Fagan v. Schroeder, 7 Cir., 284 F.2d 666, 668; Barnes v. United States, D.C.Mont., 205 F.Supp. 97, 100; Simon v. Connecticut State Department of Health, 25 Conn.Sup. 347, 203 A.2d 765, 766. It is only by virtue of Rule 72.1(c), W.R.C.P., which reserves the right of an appellant to seek other relief, that a court is enabled to hear other matters. This contemplates the joinder of a supplemental action with proper pleadings and opportunity for answer as it must be viewed as a joinder of a claim for trial in addition to the review of an administrative action.

Although in its petition for review the city asserted as the basis for its attack upon the decision the above-mentioned propositions, in its brief and argument it apparently makes sole reliance upon the

basis that the decision was not in conformity with law and contrary to the constitution, statute, and ordinance above mentioned. We find nothing in the briefs or arguments indicating there is any serious contention that the commission's action was arbitrary, capricious, or characterized by abuse of discretion. An examination of the record demonstrates there was substantial evidence upon which the commission based its findings insofar as they govern factual matters.

Tri-County by way of answer before the commission raised the question of the commission's jurisdiction to decertify this area because of the city's failure to assert any refusal or inability to supply this electrical service in its certificated area. By way of further defense it further alleged that the certificate was in the nature of a contract between the state and Tri-County and was a valuable property right; that the ordinance was void and violative of Tri-County's constitutional right, taking such valuable property without due process of law (§ 6, Art. 1, Wyo.Const.); that it involved the taking of private property without just compensation (§ 33, Art. 1, Wyo. Const.); that it would impair the obligation to contract (§ 35, Art. 1, Wyo.Const.); that the annexation was void; that the United States was an indispensable party to these proceedings since it had an interest by virtue of a mortgage lien; and that it had a right to serve this area by virtue of the contract of May 5, 1960, which had been confirmed and approved by the commission.

To sustain its claim of jurisdiction in the commission to dispose of this matter the city relies upon § 37–31, W.S.1957, quoting the following portion thereof:

"* * * and provided, further, that if any public utility, in constructing or extending its line, plant or system shall interfere or be about to interfere with the operation of the line, plant or system of any other public utility, already authorized or constructed, the commission on complaint of the public utility claiming to be injuriously affected, may, after hearing, make such order and prescribe such terms and conditions for the location of the lines, plants or systems affected, as to it may seem just and reasonable; * * *"

and argues that its application is in effect a complaint that Tri-County in building its lines within the city is interfering with the City's public utilities operation. This is a rather novel application of this section which contemplates a mutual adjustment of rights between two public service utilities under the jurisdiction of the commission with facilities already existing authorized, or constructed. However, by virtue of legislative enactment the city is not subject to the jurisdiction of the commission if this area be properly within the corporate limits, § 37–1, W.S.1957, 1973 Cum.Supp., and the commission would have no authority to make any adjustments insofar as the city was concerned, and could not make such order or prescribe such terms which would be in any manner binding upon the city but would be binding upon Tri-County. This section clearly contemplates an adjustment of mutual rights and not a unilateral one. This is clearly demonstrated by the fact that when queried by the commission the mayor showed no interest in having the commission suggest any solution, nor did he agree to be bound thereby.

■ The city contends that the commission took a too narrow view of its powers and jurisdiction and insists it should have considered the constitution and statutes of this state in addition to the provisions of the Public Utilities Act and might base its decision thereon. This is descriptive of a judicial function. There is one paramount principle which determines this question. The commission has no inherent or common-law powers, Kendall v. Malcolm, 98 Ariz. 329, 404 P.2d 414, 418, and numerous cases cited. Stated in another manner, an administrative body has only the power and authority granted by the constitution or statutes creating the same, General Telephone Company of Indiana v. Public Service Commission, 238 Ind. 646, 150 N. E.2d 891, 894, 154 N.E.2d 372; Chicago,

Burlington & Quincy Railroad Company v. Iowa State Commerce Commission, 252 Iowa 318, 105 N.W.2d 633, 635; Ohio Central Telephone Corp. v. Public Utilities Commission, 166 Ohio St. 180, 140 N.E.2d 782, 784. Such statutes must be strictly construed or "any reasonable doubt of existence of any power must be resolved against the exercise thereof," Southern Armored Service, Inc. v. Mason, Fla., 167 So.2d 848, 850. "A doubtful power does not exist," In re Restaurant Liquor License of Pesognelli, 191 Pa.Super. 320, 156 A.2d 540, 541.

■ To make such a determination as the city sought the commission would have been forced to settle and adjudicate the rights of Tri-County and the city under the contract dated May 5, 1960. This is beyond the power of administrative bodies, Bruegman v. Johnson Ranches, Inc., Wyo., 520 P.2d 489, 491; Katz Drug Company v. Kansas City Power & Light Company, Mo.App., 303 S.W.2d 672, 679; and if the city desired to obtain a judicial determination of its rights under § 37–31 and the rights of Tri-County under its certificate of public convenience and necessity its relief is in the courts and not before the commission, Dubois Telephone Exchange v. Mountain States Telephone and Telegraph Company, Wyo., 429 P.2d 812, 816; Peter Fox Brewing Company v. Sohio Petroleum Company, D.C.Ill., 189 F.Supp. 743, 750, affirmed 7 Cir., 296 F.2d 274.

It is our view from what has been said before that the commission did not have jurisdiction to adjudicate and settle the questions sought to be raised by the city. To sustain the contention that in absence of such specific power the court could on appeal have considered these issues great reliance is placed on the case of City of Schuyler v. Cornhusker Public Power District, 181 Neb. 704, 150 N.W.2d 588, 592, for authority that the district court on ap-

peal could have considered these issues. However, an examination of the statutes of that state, §§ 70–1001 to 70–1020, Rev. Stat.Neb. (Reissue 1971), reveals that they contemplated the making of agreements dividing service areas and their approval by the Power Review Board. The case further recognizes the rule that an administrative board has no power or authority other than that particularly conferred upon it by statute or by construction necessary to accomplish the aims of the statutes. It is further distinguishable as to its factual situation by virtue of § 70–1010, which specifically grants to the board "authority upon application by a supplier at any time to modify service areas or customers to be served as previously established." It would appear that such case might be considered authority for the position of the commission.

■ Insofar as the Administrative Procedure Act, §§ 9–276.19 to 9–276.33, W.S. 1957, 1973 Cum.Supp., grants the right of appeal and judicial review it does not confer any new jurisdiction upon the courts, Barnes v. United States, D.C.Mont., 205 F.Supp. 97, 100; Ove Gustavsson Contracting Company v. Floete, 2 Cir., 278 F. 2d 912, 914, certiorari denied 364 U.S. 894, 81 S.Ct. 225, 5 L.Ed.2d 188; the purpose of appeal is review and not an expansion of the jurisdiction of such body.

We find no basis upon which the trial court could have reversed the order of the commission, which is hereby reinstated.

### THE COURT'S JUDGMENT

■ The city contends, and the trial court apparently accepted the view, that it was proper to enter the judgment herein under Rule 72.1(c), W.R.C.P.[2] This reflects a misunderstanding of that rule. The rule allows a joinder under the petition for review of independent claims and that disposal might be made in one hearing

---

2. It is impossible to determine from the record the basis of the court's decision. We do not know upon what basis the court entered its declaration that Tri-County had no right to supply this electrical service and must infer it based its decision solely upon the constitution and statutes without consideration of whatever rights might have have arisen from the contract.

of the claimed independent remedies.[3] However, this rule cannot and does not seek in fairness to all parties to dispense with orderly procedures. It authorizes the inclusion in the petition for review or by separate pleading of a proper complaint, an assertion of the independent claim, and the right to the claimed remedy. However, this must give the adverse party notice of the independent claim and an opportunity to answer so that issues might be framed for an orderly disposal. An examination of this petition for review does not reveal any statement of facts which would provide the proper basis for the issuance of an injunction. The prayer alone makes reference to an order enjoining and restraining Tri-County. This court has held several times that the prayer is not a part of the complaint, Walton v. Atlantic Richfield Company, Wyo., 501 P.2d 802, 806, and cases cited. It is further notable that although Tri-County's rights under the contract are material and must be determined before complete disposal hereof, the petition for review does not seek any declaration of rights thereunder or any determination that the contract be void either in the body of the petition or in the prayer.

The extraordinary character of the injunction remedy requires that the complaint clearly set out all the facts necessary to establish such right, G. H. Sternberg & Co. v. Cellini, 16 Ill.App.3d 1, 305 N.E.2d 317, 320, and cases cited; Overton v. Alford, 210 Ga. 780, 82 S.E.2d 836, 838; Rawson v. Brownsboro Independent School Dist., Tex.Civ.App., 263 S.W.2d 578, 581. There is nothing in the petition for review stating any facts creating grounds for equitable relief. On its face it demonstrates that it will not tend to preserve the status quo but will disrupt the present system of electrical distribution and take it from the hands of Tri-County; nor do we find any suggestion of any irreparable injury to the city if Tri-County is not so enjoined. The effect of this judgment, and particularly the entry of the injunction herein, sanctions the taking of Tri-County property without proper or final determination of any rights it may have under the contract or to compensation, and would appear to have sanctioned a form of inverse condemnation at least in the definition as it appears in Levine v. City of New Haven, 30 Conn.Sup. 13, 294 A.2d 644, 645:

> " * * * 'inverse condemnation,' which is the taking of property in fact, even though no formal exercise of the power of eminent domain has occurred. * * * "

We have heretofore, in the case of Lee v. Brown, Wyo., 357 P.2d 1106, 1110, et seq., discussed somewhat fully the harsh nature of injunction and suggested it never should be granted except in clear cases of irreparable injury and urgent necessity and that it should not be made an instrument of oppression or injury, should not be granted when good conscience does not require it, and the power should always be exercised with great caution. Because this injunction was issued without full consideration of the rights of the parties and without a showing of injury, we deem it error to have entered the same.

By way of summary and for whatever assistance it may have in a proper disposal of this matter, the writer suggests that the resolution of the following questions must be made before there can be any complete determination of this matter:

1. The validity or invalidity of the contract of May 5, 1960, and the rights secured thereunder.[4]

---

3. The committee notes available to this writer indicate that the major concern of the committee was to make it clear that independent remedies could be pursued without facing the contention that they should have been raised in the administrative review, but the committee further allowed the disposition of the administrative appeal and the independent claim in one proceeding. This joinder is not a matter of right but lies in the discretion of the court, Bruegman v. Johnson Ranches, Inc., Wyo., 520 P.2d 489, 491.

4. For three different rules as to the validity of such contracts see 64 Am.Jur.2d Public Utilities, § 27, p. 570. Also note the State of Nebraska has by statute recognized the desirability of such contract as being in the public interest, §§ 70–1001 to 70–1020, Rev. Stat.Neb (Reissue 1971).

2. The possible effect of our statute, § 37–61, W.S.1957, which provides that utilities may make and file copies of contracts with the commission when made with other public utilities and the effect of the incorporation of the terms of such agreement in a certificate.

3. The question of any possible right to compensation for the loss of the right to serve the area sought to be decertified and the physical facilities of Tri-County now in place in Pioneer Addition.

4. If there be a right to compensation, whether the United States represented by the R.E.A. as mortgagee has any right to compensation and the amount thereof and the nature of a possible claim or right of the R.E.A. in and to the certificate of convenience and necessity as suggested by 7 U.S.C.A. § 907, p. 645.

It is to be realized that this is a summary statement of major questions which will involve consideration of other collateral and related matters necessary for a complete disposal hereof.

No useful purpose would be served by remanding this case for further action. The judgment of the district court is therefore reversed and the order of the commission reinstated without prejudice to the rights of the city to secure full adjudication of all the legal questions which arise herein in a proper forum.

Reversed.