570 P.2d 1353

**UNITED STATES of America,**
**Appellant,**

v.

**UTAH POWER & LIGHT COMPANY,**
**and Idaho Public Utilities**
**Commission, Respondents.**

**No. 12081.**

Supreme Court of Idaho.

Sept. 7, 1977.

Rehearing Denied Dec. 1, 1977.

Mikel H. Williams, Asst. U. S. Atty., Boise, for appellant.

Sidney G. Baucom, Salt Lake City, Utah, Wesley F. Merrill of Merrill & Merrill, Pocatello, for Utah Power & Light Co.

Dan L. Poole, Spec. Asst. Atty. Gen., Wayne L. Kidwell, Atty. Gen., Boise, for Idaho Public Utilities Commission.

DONALDSON, Justice.

The facts of this case are not in dispute. Utah Power and Light Company is a public utilities company serving customers in Utah, Wyoming and Idaho. Increased operating costs led Utah Power to apply for a rate increase before the Idaho Public Utilities Commission. After extensive hearings, the Idaho Public Utilities Commission issued Order No. 12054 granting Utah Power a 10 percent across the board increase.

One of the parties to which the Commission held the rate increase applied was the United States Energy Research and Development Administration or ERDA as it is commonly known. ERDA operates a large research and development complex in the vicinity of Idaho Falls, which requires considerable electric power. This power is supplied by Idaho Power Company and Utah Power pursuant to a three-party agreement between both utility companies and ERDA. The contract designates ERDA as the buyer and Idaho Power as the seller. It further provides that Utah Power shall cooperate with Idaho Power in furnishing power to ERDA, but Utah Power is not designated as a seller. The agreement does set forth the rate at which Utah Power would provide services to ERDA in the event that its services were required, however.

The anticipation of the parties to the transaction was that Idaho Power would not be able to satisfy ERDA's energy demands by itself. Utah Power was therefore included in the agreement to provide an additional energy source. With the exception of the rates at which both actual and standby energy would be provided, the specifics of its obligations to ERDA were not set forth in the agreement. It is undisputed, however, that Utah Power provided actual energy to ERDA and maintained an energy reservoir to satisfy ERDA's standby demands. The effect of the Commission's order is to raise the cost of these services above that provided in the contract.

I.

■ The primary issue on appeal is whether the Idaho Public Utilities Commission can unilaterally alter an existing contract between a utility and its customers. We addressed that issue recently in *Agri-*

cultural Products Corp. v. Utah Power and Light Co., 98 Idaho 23, 557 P.2d 617 (1976) and consistent with that case, we hold that insofar as the rate increase granted to Utah Power affects an existing contract, before it can be effective, the Commission has to make a specific finding that the contractual rate is "unjust, unreasonable, discriminatory, preferential, or in anywise in violation of any provision of law" within the meaning of I.C. § 61–502. Since the Commission did not make such a finding, we set aside Order No. 12054 in so far as it applies to ERDA.

■ We start with the proposition that a public service commission has no inherent power; its powers and jurisdiction derive in entirety from the enabling statutes creating it and "nothing is presumed in favor of its jurisdiction." *Arrow Transp. Co. v. Idaho Public Utilities Comm'n*, 85 Idaho 307, 379 P.2d 422, 425 (1963). *See also, Tri-County Electric Assoc. v. City of Gillette*, 525 P.2d 3 (Wyo.1974); *Chicago, Burlington & Quincy R.R. Co. v. Iowa State Commerce Comm'n*, 252 Iowa 318, 105 N.W.2d 633 (1960); *General Telephone Co. of Indiana v. Public Service Comm'n*, 238 Ind. 646, 150 N.E.2d 891 (1958); *Ohio Central Telephone Corp. v. Public Utilities Comm'n*, 166 Ohio St. 180, 140 N.E.2d 782 (1957). However, while jurisdiction of the Commission is to be strictly construed once jurisdiction is clear the Commission is allowed all power necessary to effectuate its purpose. "Every power expressly granted, or fairly to be implied from the language used, where necessary to enable the commission to exercise the powers expressly granted should be afforded." Am.Jur.2d, Public Utilities, § 232 (1972).

The Idaho Public Utilities Act specifically delegates rate-fixing authority to the Idaho Public Utilities Commission. The pertinent provisions of the Act are set forth in footnote No. 1.[1] Idaho Code § 61–622 provides

1. "61–622. Finding of commission necessary for increase in rate.—No public utility shall raise any rate, fare, toll, rental or charge or so alter any classification, contract, practice, rule or regulation as to result in an increase in any rate, fare, toll, rental or charge, under any circumstances whatsoever, except upon a showing before the commission and a finding by the commission that such increase is justified. The commission shall have power, and is

that before a public utility can raise rates or alter contracts to affect a rate increase a showing must be made before the Commission that such increase is justified. Idaho Code § 61–502 gives the Commission the authority either upon its own motion or upon complaint to abrogate existing rates including those set by contract if they are found to be "unjust, unreasonable, discriminatory, preferential, or in any way in violation of law" and fix new rates in their stead. Idaho Code § 61–503 completes the Commission's power over rate-making by giving it the authority, implicit in the prior statutes to investigate rate schedules and contracts affecting rates. The delegation of rate-making authority to the Commission was upheld by this Court at an early date. *Idaho Power & Light Co. v. Blomquist,* 26 Idaho 222, 141 P. 1083 (1914). We do not question it now.

■ The Commission's rate-making authority is not so absolute that it can unilaterally abrogate contractual agreements without making the findings called for in I.C. § 61–502, however. As we stated at the outset, a public service commission only has the power delegated to it by statute. No provision in the public utilities act gives the Commission the authority to indiscriminately set aside contracts. To the contrary, the act recognizes the continued viability of contracts by requiring contracts to be filed with the Commission.

■ Nor do we think such a power can be implied from those statutes which delegate rate-making authority to the Public Utilities Commission. The United States Supreme Court was faced with an identical question in *United Gas Pipe Line v. Mobile Gas Serv. Corp.,* 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956). In that case a natural gas company regulated by the Federal Power Commission under the Natural Gas Act

hereby given authority, either upon complaint or upon its own initiative without complaint, at once, and if it so orders, without answer or other formal pleadings by the interested public utility or utilities, but upon reasonable notice, to enter upon a hearing concerning the propriety of such rate, fare, toll, rental, charge, classification, contract, practice, rule or regulation, and pending the hearing and decision thereon, such rate, fare, toll, rental, charge, classification, contract, practice, rule or regulation shall not extend beyond thirty (30) days when such rate, fare, toll, rental, charge, classification, contract, practice, rule or regulation would otherwise go into effect, unless the commission in its discretion extends the period of suspension for a further period not exceeding five (5) months; provided further, that prior to the expiration of said periods of suspension the commission may, with the consent in writing signed by the party filing such schedule, permanently or further suspend the same. On such hearing, the commission shall establish the rates, fares, tolls, rentals, charges, classifications, contracts, practices, rules or regulations proposed, in whole or in part, or others in lieu thereof, which it shall find to be just and reasonable."

"61–502. Determination of rates.—Whenever the commission, after a hearing had upon its own motion or upon complaint, shall find that the rates, fares, tolls, rentals, charges or classifications, or any of them, demanded, observed, charged or collected by any public utility for any service or product or commodity, or in connection therewith, including the rates or fares for excursions or commutation tickets, or that the rules, regulations, practices, or contracts or any of them, affecting such rates, fares, tolls, rentals, charges or classifications, or any of them, are unjust, unreasonable, discriminatory or preferential, or in any wise in violation of any provision of law, or that such rates, fares, tolls, rentals, charges or classifications are insufficient, the commission shall determine the just, reasonable or sufficient rates, fares, tolls, rentals, charges, classifications, rules, regulations, practices or contracts to be thereafter observed and in force and shall fix the same by order as hereinafter provided, and shall, under such rules and regulations as the commission may prescribe, fix the reasonable maximum rates to be charged for water by any public utility coming within the provisions of this act relating to the sale of water."

"61–503. Power to investigate and fix rates and regulations.—The commission shall have power, upon a hearing, had upon its own motion or upon complaint, to investigate a single rate, fare, toll, rental, charge, classification, rule, regulation, contract or practice, or any number thereof, or the entire schedule or schedules of rates, fares, tolls, rentals, charges, classifications, rules, regulations, contracts or practices, or any thereof, of any public utility, and to establish new rates, fares, tolls, rentals, charges, classifications, rules, regulations, contracts or practices or schedule or schedules in lieu thereof.  *  *  * ."

had filed a new rate schedule with the Federal Power Commission that purported to increase the cost of gas to one of its distributors above the rates set in a long-term contract. When the Commission approved the new rate schedule, the distributor appealed arguing that the Commission exceeded its statutory authority when it effectively abrogated the terms of an existing contract. The Commission argued that § 4(d) of the Federal Natural Gas Act, which in language similar to that of the Idaho Public Utilities Act requires new rate schedules and new contracts affecting existing rate schedules to be filed with the Commission, allowed a natural gas company to change its rate contracts simply by filing a new schedule of rates and obtaining commission approval. The United States Supreme Court rejected this interpretation. In language that is equally applicable to § 61–622 of the Idaho Public Utilities Act, the Court said that § 4(d) did not allow the Commission to nullify existing contracts.

"The section says only that a change *cannot* be made without proper notice to the Commission; it does not say under what circumstances the change *can* be made. Absent the Act, a unilateral announcement of a change to a contract would of course be a nullity, and we find no basis in the language of § 4(d) for inferring that the mere imposition of a filing and notice requirement was intended to make effective action which would otherwise be of no effect at all. In short, § 4(d) on its face indicates no more than that otherwise valid changes cannot be put into effect without giving the required notice to the Commission. To find in this section a further purpose to empower natural gas companies to change their contracts unilaterally requires a reading into it language that is neither

there nor reasonably to be implied." 350 U.S. at 339–340, 76 S.Ct. at 378.

■ This is not to say that contracts are not subject to the authority of the public service commission if the enabling statutes give the commission authority to abrogate private contracts. Courts have long recognized that public utility regulation is valid exercise of the police power of the state and that contracts entered into after the effective date of such regulation are subordinate to that power. The point is that the legislature must delegate the power to alter contracts in order for the commission to exercise such power.

Section 61–502 of the Idaho Public Utilities Act, quoted earlier in this opinion, does give the Commission authority to affect contracts, but that authority is qualified. The Commission can alter contracts only when they are found to be "unjust, unreasonable, discriminatory, preferential, or in any wise a violation of law." We have recently interpreted this section to mean that a condition precedent to the Commission's exercise of its power under § 61–502 is a finding that the existing contractual rate falls under one of the above categories. *Agricultural Products Corp. v. Utah Power & Light Co., supra.* See also, *Federal Power Comm'n v. Sierra Pacific Power,* 350 U.S. 348, 76 S.Ct. 368, 100 L.Ed. 388 (1956). We do not deviate from that interpretation. The Commission does not have inherent power to set aside contracts, it can do so only under a statutory authorization and that authorization is expressly limited. Since the Commission did not make any finding as to the above factors, we set aside the order for that purpose. It can alter the existing rate for the energy Utah Power supplies ERDA only if it finds that that rate is "unjust, unreasonable, discriminatory, or in anywise a violation of law."[2]

---

**2.** We should note that under prior orders of the Commission the contractual rate at which Utah Power supplies energy to ERDA has been adjusted upwards. We do not question the efficacy of past rate increases that have not been appealed within the statutory period of limitations set forth in I.C. § 61–627. We only hold that the requirements of I.C. § 61–502 apply to each successive modification of an existing contract.

## II.

ERDA would have us go beyond the holding of *Agricultural Products*. ERDA argues that because Utah Power was not designated as a seller in the tripartite agreement between Utah Power, Idaho Power and itself the Commission did not have authority under any circumstances to fix the rate at which Utah Power provided services to ERDA. We will not place such formal restrictions on the Commission's rate-fixing authority.

The record in the present proceedings unequivocally establishes that Utah Power provided services to ERDA. The only confusion as to this matter arises from the nature of the collection procedure. Utah Power does not bill ERDA directly. The procedure is for Utah Power to present its billing for the services that it provides to ERDA to Idaho Power. Idaho Power then incorporates this billing and its own billing for its share of the services rendered into one composite bill. It collects the total amount charged ERDA and divides the proceeds between Utah Power and itself in accordance with the services provided by each party. The record shows that this procedure has been followed since 1957 when the tripartite agreement between the parties first went into effect.

The fact that Idaho Power performs the mechanical act of billing does not obviate Utah Power's role in providing services to ERDA. This is the determinative factor for jurisdictional purposes.

The enabling statutes do not specifically state that the Commission's rate-fixing authority is activated solely by the fact of a public utility providing services to a consumer, but we can think of no other sensible construction. We stated at the outset that once the Commission's jurisdiction is clear, the Commission should be allowed all power necessary to effectuate its purpose and rate-fixing is clearly within the Commission's jurisdiction.

The acceptance of ERDA's argument would render the Commission's rate-fixing authority meaningless. Parties to any contract providing for multiple power sources could effectively limit the Commission's power to fix rates by the simple device of designating only one of the suppliers as the seller and channelling the services through him. We do not think such a result was intended by the Idaho Public Utilities Act. In fact, in the general definitional section of the Act, public utility is defined to include the utility company which provides services to a consumer indirectly.

"61–129. Public Utility.—The term 'public utility' when used in this act includes every common carrier, pipeline corporation, gas corporation, electrical corporation, telephone corporation, telegraph corporation, water corporation, and wharfinger, as those terms are defined in this chapter and each thereof is hereby declared to be a public utility and to be subject to the jurisdiction, control and regulation of the commission and to the provisions of this act: provided, that the term 'public utility' as used in this act shall cover cases both where the service is performed and the commodity delivered directly to the public or some portion thereof, and where the service is performed or the commodity delivered to any corporation or corporations, or any person or persons, who in turn, either directly or indirectly or mediately or immediately, performs the services or delivers such commodity to or for the public or some portion thereof."

■ Implicit in I.C. § 61–129 and the code sections that delegate rate-making authority to the Commission is the notion that the operative factor for jurisdictional purposes is the receipt of services. A member of the public who receives services from a public utility is subject to public utility regulations and control. Contract provisions cannot be nullified unless the Commission makes the findings mandated by I.C. § 61–502, but once those findings are made, the Commission has the authority to determine the rate at which a public utility pro-

vides services to a consumer, even if the utility is not designated as the seller in the relevant contractual agreement.

The order of the Idaho Public Utilities Commission is set aside. Costs to appellant.

McFADDEN, C. J., and SHEPARD and BISTLINE, JJ., concur.

BAKES, J., concurring in result:

I concur in the result reached in Part I of the majority opinion. Because the United States, Idaho Company Power and Utah Power & Light Company entered into an agreement which set forth the price that Utah Power would charge for all electrical energy it supplied to ERDA, then under the authority of *Agricultural Products Corp. v. Utah Power & Light Co.*, 98 Idaho 23, 557 P.2d 617 (1976), the Public Utilities Commission could set aside that agreement and provide new rates for power supplied to ERDA by Utah Power only if the PUC finds that "the rate 'is so low as to adversely affect the public interest—as where it might impair the financial ability of the public utility to continue its service, cast upon other consumers an excessive burden, or be unduly discriminatory.' *Federal Power Comm'n v. Sierra Pac. Power Co.*, 350 U.S. 348, 76 S.Ct. 368, 100 L.Ed. 388 (1956)." 98 Idaho at 29, 557 P.2d at 623. The absence of such a finding is dispositive of this appeal.

That being the case, it is unnecessary for the Court to decide or consider the issues discussed in Part II of the majority opinion, and I do not join in that part of the Court's opinion.